STEEM–ELECTRIC CORPORATION v. HERZFELD–PHILLIPSON CO. et al.

No. 54.

District Court, E. D. Wisconsin.

Nov. 7, 1939.

Edward S. Rogers (of Rogers, Woodson & Rogers), and Geo. H. Wallace and Charles B. Cannon (of Belt, Wallace & Cannon), all of Chicago, Ill., and E. H. Hallows (of Fish, Marshutz & Hoffman), of Milwaukee, Wis., for plaintiff.

A. L. Morsell, Jr. (of Morsell, Lieber & Morsell), and Bruno V. Bitker, both of Milwaukee, Wis., for defendants.

STONE, District Judge.

This case arises under the design patent and trademark laws of the United States and is a suit of a civil nature between citizens of different states. The amount in controversy is in excess of three thousand dollars ($3,000) exclusive of interest and costs.

The plaintiff, Steem-Electric Corporation, is a corporation of the State of Missouri, having its principal place of business at 1720-26 Lafayette Avenue, St. Louis, Missouri.

The defendant, The Herzfeld-Phillipson Company, is a corporation of the State of Wisconsin operating under the name "The Boston Store," a department store at 331 West Wisconsin Avenue, Milwaukee, Wisconsin.

The defendant, Western Hardware and Specialty Manufacturing Company, is a corporation of the State of Wisconsin with its principal place of business at 228 South First Street, Milwaukee, Wisconsin.

The defendant, Harry E. Bremer, trading as H. E. Bremer Manufacturing Company, is a citizen of the State of Wisconsin, with his place of business at 1415 North 31st Street, Milwaukee, Wisconsin.

The intervening defendant, Steam-O-Matic Corporation, is a New York corporation having its principal place of business at 1150 Broadway, New York City, and said defendant has submitted to the jurisdiction of this Court.

United States Design Letters Patent No. D-112,129, patented November 8, 1938, in the name of Ernest F. Pohl, was assigned to plaintiff, and said patent is now in the name of plaintiff.

The design, as shown and claimed in Pohl patent in suit No. D-112,129, was invented by the defendant Harry Bremer, and Ernest F. Pohl.

The plaintiff, Steem-Electric Corporation, is now and has always been the owner of United States trade-mark registration No. 352,415, dated November 30, 1937.

Plaintiff in its trade-mark registration No. 352,415, in order to obtain the allowance thereof, and in compliance with the request of the Patent Office, disclaimed the words "Steem Electric" apart from the mark, which mark includes the word "Steem" displayed in letters having a wavy outline and surrounded by a cloud design, and the word "Electric" written in lightning flash manner and surrounded by a lightning design.

After the filing of the original bill herein, plaintiff filed application for registration of the term "Steem Electric" under the Act of March 19, 1920, 15 U.S.C.A. § 121 et seq., which registration was granted on April 25, 1939, No. 366,776, and the plaintiff is now and has always been the owner of said trade-mark registration No. 366,776.

The words "Steam Electric" were used extensively in connection with the sale of steam electric irons in interstate commerce by Reimers Electric Appliance Company, prior to plaintiff's adoption of the term "Steem Electric"; the words "Steam and Electric Pressing Irons" were used by Dejur Electric Works prior to plaintiff's use of its term; the words "Electric Steam Iron" were used by Arthur Sussman, Inc. prior to plaintiff's use of its mark; and similar terms are in common use by National Steam Iron Corporation, New York Pressing Iron Co., Cissel Bros. Manufacturing Co., J. Ginsberg, Inc., and Steam Pressing Iron Co. of Chicago. The words "Steam Electric" and "Electric Steam" appear as the descriptive titles to patents on steam electric irons, and the Kako patent No. 1,347,224, which has expired, has as a title "Electric Steam Iron".

"Steem" appearing on plaintiff's label is a phonetic spelling or misspelling of the English word "Steam".

"Steem Electric" used in connection with a steam electric iron sold by plaintiff, is a common and generic term descriptive of the product to which it is applied.

In view of the descriptiveness of plaintiff's mark, and in view of the prior and common uses of similar terms, as set forth

in paragraph 12 above, plaintiff's alleged mark "Steem Electric" cannot and has not acquired a "secondary meaning".

The plaintiff, Steem-Electric Corporation, has been in the business of manufacturing and selling electric steaming irons under its trade-mark "Steem Electric" since some time during the month of February, 1936, and since that time has continuously used, and is now using, its trademark "Steem Electric" on electric steaming irons which it has sold and is selling in this district and in commerce among the several states.

The total sales by the plaintiff, Steem-Electric Corporation, of its electric steaming irons, bearing its trade-mark "Steem Electric", to May 1, 1939, are as follows:

| Year | Total Value of Sales |
|---|---|
| 1936 | $ 10,526.84 |
| 1937 | 52,321.92 |
| 1938 | 258,689.50 |
| 1939 (To May 1st) | 217,228.98 |

representing a total of approximately 107,000 irons.

The plaintiff, Steem-Electric Corporation, has extensively advertised its electric steaming irons, under its trade-mark "Steem Electric" by, radio and in magazines and other periodicals having a national circulation, and in addition to such advertising the plaintiff, in co-operation with department stores and other dealers, has advertised its irons in numerous newspapers throughout the United States, as well as in trade papers, catalogues, and circulars.

The advertising expenditures made by the plaintiff, Steem-Electric Corporation, in advertising its electrical steaming irons, bearing its trade-mark "Steem Electric", have been as follows, to May 15, 1939:

| Year | Advertising Expenditures |
|---|---|
| 1936 | $ 926.67 |
| 1937 | 2,754.80 |
| 1938 | 42,093.61 |
| 1939 (To May 15) | 33,938.20 |

making a total expenditure for advertising of approximately $79,713.28, exclusive of expenditures for demonstrators.

In addition to the foregoing advertising expenditures, the plaintiff, Steem-Electric Corporation, has likewise expended the following sums for demonstrating its electric steaming irons, bearing its trade-mark "Steem Electric", in department and other stores, to May 15, 1939:

| Year | Expenditures for Demonstrators |
|---|---|
| 1937 | $ 480.00 |
| 1938 | 15,942.41 |
| 1939 (to May 15) | 6,637.43 |

making a total of approximately $23,059.84.

The plaintiff has used and is now using its trade-mark "Steem Electric" written in a peculiar and distinctive manner, and in combination with a design representing escaping steam, as shown in the drawing of its registration No. 352,415 under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., and also in plain or block type, as shown in the drawing of its registration No. 366,776 under the Trade-Mark Act of March 19, 1920.

The defendants, Steam-O-Matic Corporation and Western Hardware and Specialty Manufacturing Company, are now and have been in the business of manufacturing and selling electric steaming irons under the name Steam-O-Matic since some time during the month of November, 1938.

The defendants, The Herzfeld-Phillipson Company, a corporation, commonly known as "The Boston Store", Western Hardware and Specialty Manufacturing Company, a corporation, and Steam-O-Matic Corporation, have sold and are now selling in this district, electric steaming irons shown by plaintiff's Exhibit No. 1 bearing the name "Steam-O-Matic", and the defendant, Steam-O-Matic Corporation, has been selling such irons, bearing the name "Steam-O-Matic", in interstate commerce throughout the various parts of the United States since some time during the month of November, 1938.

The plaintiff's iron, shown by plaintiff's Exhibit No. 4, embodies a casing or housing which has a stippled exterior surface or finish resembling the appearance of hammered aluminum; and the plaintiff has used this stippled finish upon its irons since some time during the month of January, 1938.

Prior to the adoption by plaintiff of the stippled finish upon its iron, a stippled finish had been shown in connection with irons in Rosa patent No. 429,202 of 1890, and Asbury patent No. 33,733 of 1900; the common use of a stippled finish on various oth-

er articles is shown by defendants' Exhibit 27 (Book of Patents); the common use of such finish on kitchen ware is shown by defendants' Physical Exhibits 77 to 87, and by Wagner Ware catalogues—defendants' Exhibits 88 and 89; and defendant Harry Bremer had used such finish on aluminum ware when working for his father's company, Bremer Aluminum Corporation, prior to the use of such finish by plaintiff.

The idea of applying a stippled finish to a steam iron was originally conceived by defendant Harry Bremer, because of his common use of this finish on other household products.

Defendants' steam electric iron is made of aluminum, because aluminum resists rust, and a stippled finish is used by defendants, from necessity, to hide imperfections on the surface of the aluminum castings and to reduce polishing costs. A stippled finish of the type used can be drawn from the mould, and is the only practical finish for defendants to employ.

Defendant, The Herzfeld-Phillipson Company, a customer of the Steam-O-Matic Corporation and the Western Hardware and Specialty Manufacturing Company, has passed off defendants' "Steam-O-Matic" iron in response to written orders, calling for "Steem Electric" irons, presented to said company by investigators of the plaintiff after this suit was commenced.

The defendants, Steam-O-Matic Corporation, Western Hardware and Specialty Manufacturing Company, and The Herzfeld-Phillipson Company, and each of them, have passed off defendants' "Steam-O-Matic" iron as and for plaintiff's iron, without explanation, in response to written mail orders calling for "Steem Electric" irons.

In addition to the above mentioned instances of passing off, confusion in advertising has occurred at times between the plaintiff's trade-mark "Steem Electric" and the defendants' trade-mark "Steam-O-Matic", and between the plaintiff's iron and the defendants' iron.

The only similarity in shape between plaintiff's iron and defendants' iron is the natural similarity of one iron for another, and defendants' iron is not confusingly similar to plaintiff's. The plaintiff's iron is much heavier than defendants' iron; there is a marked difference in the shape and appearance of the two irons; plaintiff's iron is sold in a predominantly red carton; defendants' iron is sold in a plain kraft package with blue lettering. Defendants, in their advertising on the cartons and otherwise, do not use anything resembling plaintiff's cloud effect and lightning flashes.

Steam electric irons are customarily bought only after rigid examination, and plaintiff's purchases of defendants' irons, made by paid investigators, are not typical of actual methods of purchase of this type of product.

Defendants do not have complete control over the advertising methods, display methods or sales methods of retailers.

Plaintiff has created a situation for confusion by adopting as its mark the natural, descriptive term which the public uses in calling for this type of iron, as distinguished from an ordinary electric iron.

Plaintiff, prior to filing the Bill of Complaint herein, failed to give notice to the public that its alleged trade-mark was registered by affixing thereon the words "Registered U. S. Patent Office", as required by statute, and failed to give defendants any actual notice of said registration, or any notice that it objected to the use of the term "Steam-O-Matic" by defendants.

Plaintiff's trade-mark registration No. 352,415 is valid only when limited to use in connection with the undisclaimed part thereof, which includes the cloud and lightning methods of display.

Defendants' mark "Steam-O-Matic" is not an infringement upon plaintiff's registration, and is not confusingly similar to plaintiff's alleged trade name "Steem Electric", which latter term differs from marks which preceded it only in the change of an "a" in the word "steam" to an "e", such misspelling not being used by defendants.

Defendants have not competed unfairly with plaintiff in adopting and using the term "Steam-O-Matic".

Functional features cannot be exclusively appropriated under the laws of unfair competition, and defendants have not competed unfairly in adopting and using a stippled exterior finish upon their irons for the purpose of hiding imperfections and reducing polishing costs.

Defendants have not competed unfairly in adopting and using the shape shown in its iron, plaintiff's Exhibit 1.

Plaintiff's Design Patent No. D-112,129 is not infringed by defendants' iron, plaintiff's Exhibit 1.

Defendants have not competed unfairly in connection with their advertising.

Plaintiff is not entitled to the relief prayed for in its complaint against any of the defendants.

Plaintiff's Bill of Complaint shall be dismissed with costs to defendants.

A decree shall be entered accordingly.