48 CCPA

### Application of SHAKESPEARE COMPANY.

Patent Appeal No. 6629.

United States Court of Customs and Patent Appeals.

Feb. 21, 1961.

Rehearing Denied June 2, 1961.

Kenyon & Kenyon, New York City, Robert U. Geib, Jr., Washington, D. C. (Ralph L. Chappell, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This case has to do with marks on fishing rods which appellant claims to be and desires to register as a trademark. The appeal is from the refusal of the Patent Office to do so.

The application, Ser. No. 16,977, filed October 4, 1956, says:

"The mark consists of a continuous spiral marking formed in relief on the surface of and extending for substantially the full length of the rod.

\* \* \* \* \* \*

"The mark is used by applying it to the goods."

A drawing was filed which is supposed to show the mark, and does so as well as a drawing can, but its true nature must

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of*

*Judge O'CONNELL,* pursuant to provisions of Section 294(d), Title 28 United States Code.

be gathered from the specimens actual fishing rods of resin-bonded glass filaments. The mark will best be understood from a consideration of how it is made, as described in United States Patent No. 2,571,717 to Howald and Meyer. Appellant's rod has been advertised as the "patented Howald-Process Wonderod." [1]

The Howald et al. patent discloses a rod and a method of making it wherein the rod is constructed by covering a core with a layer of longitudinally extending glass filaments which have been precoated with a hardenable synthetic resin adhesive such as a polymerizable unsaturated polyester or a diallyl ester. The core is some light wood or resin material strong in compression and may be tapered. It is fed into a machine wherein the resin-coated glass filaments are applied to it from bobbins and bound around it by a temporary spiral wrapping of binding tape. While still bound by the tape the assembly passes through an oven wherein the resin is set and after leaving the oven the tape is unwound. According to the patent specification, the tape may be a steel ribbon, a cellophane strip, or other tough smooth material. According to the record, cellophane is used in practice.

This manufacturing process leaves its mark on the rod. It is this mark which appellant wants to register. Until the mark has had attention called to it, it is not very apparent. Inspection of samples shows that a tape about 4 mm. wide has been wrapped spirally on the rod with an overlap of about 0.5 mm. The setting of the resin within this smooth wrapping leaves a glassy surface with a slight spiral rib of no greater height than the thickness of the cellophane wrapping, produced by the overlap of its adjacent turns. In other words, one can see where the edges of the tape were located during the curing of the resin. It might be considered more of a tactile mark than a visual mark because this surface roughness is easier to feel than to see. It is apparent that it got there

as a necessary result of the process of manufacture, as an incident of the process used, and was not applied arbitrarily for the purpose of indicating origin or identifying the goods. In fact, such use was admittedly an afterthought. Goods made by this process necessarily bear this mark and if it is not to remain, it must be removed by a further processing step, such as grinding, which, it can be presumed, would involve further manufacturing cost.

Appellant tells us, by way of argument, that it recognized in the beginning that these markings might be a definite handicap to sales and considered the desirability of grinding them off to make a smooth rod. It then says:

> "Appellant, however, decided against this step and adopted the spiral markings as a trademark and then started a campaign aimed at teaching the public that the spiral mark was a Shakespeare trademark."

On the basis of the assumed success of the advertising campaign, which we accept, arguendo, appellant says the mark has become distinctive of its goods in commerce, has acquired a "secondary meaning," and that registrability follows as a matter of course, citing section 2(f) of the Trademark Act of 1946 (15 U.S.C. § 1052(f), 15 U.S.C.A. § 1052 (f) ).

We have just had occasion to review the law relevant to the instant appeal in the case of In re Deister Concentrator Company, Inc., appeal No. 6608, which we are deciding concurrently herewith, Cust. & Pat.App., 289 F.2d 496. That case involved an alleged trademark which we held unregistrable because it was "functional." While the appellant here argues that the spiral ridge marking is not "functional" in the sense that it performs no useful function in the rod, nor any decorative function, the principle of law which underlies the refusal to register "functional" marks applies equally to

---

1. The presence of the trademark "Wonderod" on the goods has in no way influenced our decision and has no bearing on the issue.

the instant case. In the Deister case we said:

> "The true basis of such holdings is not that they [the marks] cannot or do not indicate source to the purchasing public but that there is an overriding public policy of preventing their monopolization, of preserving the public right to copy."

For a discussion of the law which leads us to that conclusion we refer to our opinion, which also points out the irrelevancy of attempts by advertising to create exclusive trademark rights in that which cannot be monopolized under the law.

We hold that the spiral marking on glass fishing rods which results from the above described process of manufacture cannot be monopolized by treating it as a trademark, for which reason it is not registrable as a trademark. Whether or not the process is covered by the claims of the Howald et al. patent, we must treat the process, and the resulting product, as one which will eventually be in the public domain, even if it is not now. Were the spiral marking to be treated as a trademark the holder of the trademark rights would have a potentially perpetual monopoly which would enable it either to prevent others from using the process which results in the mark or force them to go to the trouble and expense of removing it. It is immaterial that other processes may be available by which glass rods without the mark can be made. Absent patent protection on the Howald et al. process, a condition which will exist after October 16, 1968, when the patent expires, freedom to utilize that process and whatever advantages it may have is a public right which cannot be interfered with by alleged trademark rights. This is true notwithstanding any present ability of purchasers to recognize a Shakespeare "Wonderod" by reason of the spiral marking for reasons fully explained in the Deister opinion. It is also immaterial how many fishermen or purchasers think the marking is a "trademark."

The Patent Office Solicitor would have us hold the spiral marking to be "functional," "because it results from the specific process described in the Howald et al. patent." While this might be convenient from the standpoint of making certain precedents literally applicable and facilitate the classification of legal literature, the controlling principle goes deeper and we prefer to rest our decision on the principle rather than on a mere label. It seems to us appellant is quite accurate in saying the spiral mark performs no function whatever, but that is not the determining factor.

The decision below is affirmed.

Affirmed.