50 CCPA
### Application of the POLLAK STEEL COMPANY.

Patent Appeal No. 6937.

United States Court of Customs and Patent Appeals.

March 13, 1963.

Burton Perlman, Paxton & Seasongood, Cincinnati, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 131 USPQ 482, affirming the examiner's ex parte refusal of appellant's application to register its mark on the Supplemental Register, Ser. No. 91,837, filed February 29, 1960.

The board, in its opinion initially deciding this case on October 19, 1961, relied on our decision in In re Deister Concentrator Company, Inc., 289 F.2d 496, 48 CCPA 952. Our opinion in that case, handed down February 21, 1961, was first published, due to a petition for rehearing which delayed publication, on.

June 2, 1961, which was after appellant here had filed its brief in the appeal to the board. Appellant requested the board to reconsider and fully argued the relevancy of what we said in the Deister case. The board did reconsider and reaffirmed its original decision on December 8, 1961.

 In our Deister opinion we pointed out that, in line with consistent decisions of the United States Supreme Court and other courts, nothing which the public has or would have a right to copy, in the absence of valid patent or copyright protection, can be the subject of a valid trademark registration and that this is so irrespective of public acceptance of the subject matter sought to be registered as an indication of source. We pointed out that this is a fundamental principle of the law of trademark ownership which is outside the provisions of the trademark statute (the Lanham Act), to which the provisions of that statute are subservient. We also pointed out that the principle applies without regard to the effort or money expended in an attempt to create trademark rights in something which the public has or will have the right to copy.

While the application herein is one for registration on the Supplemental Register, the principles stated in the Deister case are as applicable thereto as they were to the application here involved to register on the Principle Register. Section 23 of the Lanham Act, 15 U.S.C. § 1091, which governs registration on the Supplemental Register, permits registration only of marks "capable of distinguishing applicant's goods or services." How such capability must be judged is dealt with hereinafter.

Since the nature of the goods is of vital importance to the decision in this case we will describe them first, before describing the "mark."

### The Goods

 Appellant seeks to register a mark for "metal fence posts." The record contains descriptive literature in which this merchandise is referred to as CREST LITE STUDTEE STEEL DRIVE RE-FLECTORIZED FENCE POST. "CREST LITE" is featured as a trademark and the remainder of the phrase appears to be descriptive. The posts are of steel and have a T-shaped cross section with studs down the flat top of the "T" to keep fence wire in place. The posts are designed to be driven into the ground. The advertisements feature the "Exclusive Reflectorized top" or "the *exclusive* Reflectorized Crest." This is further explained in one advertising piece as follows: "AT NIGHT 60,000 minute glass beads per square inch, embedded in clear weather resistant alkyd resin, pick up and reflect tractor, truck or automobile headlights. Each CREST LITE lives up to its name along driveway, field or highway. * * * Every post a night guide and distinctive mark for your property." Pictures showing road and driveway boundaries marked by shining fence post tops illustrate the text. So much for the goods.

### The Mark

The drawing of the mark sought to be registered shows the top portion of a "studtee" fence post, the uppermost few inches of which is denoted, by brackets and wording, as having "Reflective Coating." (The drawing is reproduced in the published board opinion, 131 USPQ at page 483.)

The application states, "The trademark is used by applying it directly to the goods and five drawing reproductions showing the mark as actually used are presented herewith." The Patent Office brief says that the "drawing reproductions" are colored and show "the reflective top of the post as gray and the rest of the post as green."

The application contains this descriptive paragraph:

"The mark consists of a coating, which can reflect a directed beam of artificial light, applied to a mental [sic] fence post, the coating being in the form of a design extending between a substantially straight boundry line normal to the axial length of the post a short distance

568

below the top of the post, and the top of the post, as indicated in the accompanying drawing."

Appellant's arguments have made much of this "design." To get it into realistic perspective at the outset, we state that all the "design" amounts to is a solid coating of reflective coating material, without regard to color, covering a few inches of the top of the post. The application is rather vague as to how much of the top is thus coated, specifying only "a short distance." Evidence, together with the application drawing, indicates that, in practice, about 3½ inches of the top is coated.

There are references in the examiner's final rejection and Examiner's Statement, in the board opinion, and in appellant's brief to a disclaimer, apparently a part of the application as amended, shown in the record, however, only as "Insert B¹," which insert has not been included though appellant relies on it. The solicitor's brief has helpfully stated that the disclaimer, consistently with the statements about it which are of record, is shown by the Patent Office records to read as follows:

"Applicant disclaims the reflective coating applied to the metal fence post except in the design shown in the accompanying drawing."

At first blush it would appear to be somewhat enigmatic that the mark *consists* of a reflective coating covering the top few inches of the post, which reflective coating is disclaimed "except in the design shown," which design resides in the solid coating of the top few inches of the post. It looks as though the mark sought to be registered is disclaimed. But since appellant's counsel obviously could not so intend, we will turn to the arguments which attempt to make a case for registration out of the above and other facts, with a view to developing what is left of the mark after giving effect to the disclaimer.

Appellant has introduced the affidavit of an officer and 12 affidavits from dealers and users. Several advertisements are identified by the officer. The main burden of the other affidavits, which have a certain family resemblance indicative of common origin, is that in the fence post business it had become customary to identify the producers by color on the tops of the posts. The most specific illustrative statement on this point is the following:

"It is well known to those acquainted with fence posts that a post having a band at the top red in color is a product of the Inland Steel Company. A post with a silver band at the top is the product of the Colorado Fuel & Iron Corp. Those with a gold band are produced by Calument [sic] Steel."

The background picture, therefore, is that the origin of fence posts of this type is indicated to those who deal in and use them by the color of the tops. Appellant decided to identify the source of its posts, we are told, by putting a reflective coating at the top. As its vice president states,

"We felt by the same token, that the trade and the public would recognize our posts as the product of a particular source because we use the same design, though in a manner specifically different from the usage by our competitors.

"Moreover, we have taken pains to teach the public that when a reflective coating is applied in the design consisting of a band at the top of the post, it identifies a post of our manufacture."

The last paragraph is borne out by the advertisements, each of which concludes with this announcement:

"CREST LITE *and the reflective band at the top of a fence post are the trade marks of The Pollak Steel Company.*"

The users' affidavits, as might be expected, all conclude with statements typified by the following:

"Thus, when I now see a post with a reflective 'top' I assume that it is a Pollak Steel product."

We accept this evidence at face value. The question in this case, however, is whether such consumer assumptions are of any legal significance.

### The Rejection

The examiner said in his Statement that registration was refused on the ground that the band of reflective material "is inherently functional in character and use and therefore lacks capacity to distinguish the applicant's goods." With some perspicacity he observed:

"Counsel's argument, however carefully presented, appears to be an attempt to 'weave' the case to registration by first claiming an analogy between a functional coated band applied to fence posts, and specific colored bands of no utility used on the same goods, in order to show precedent in the trade, but to disassociate the functional coating from the design to avoid a rejection based on its utilitarian purpose. As far as the Examiner is concerned, color marks are not analogous to and form no precedent for allowance here".[1] The board, in affirming, said:

"It is obvious from the facts adduced herein that the reflective coating utilized by applicant is inherently functional and that its placement at the uppermost portion of the post conforms to the commonly accepted practice of applying reflecting indicia to road signs and boundary markers for safety and protection purposes. Any device, the immediate aim of which is to serve a functional mission, cannot be granted the legal protection a registration achieves. \* \* \* [citing the Deister case]."

### This Appeal

In this court appellant appears to be pursuing the same arguments it made below. First, it says the mark is capable of distinguishing its goods. The evidence, if accepted, certainly shows that to be the fact *as of this time* and the reflective tops may be considered to have a de facto "secondary meaning." However, we disposed of that fact as of no legal significance under circumstances similar to those here in the Deister case. If and when others exercise the right, which we hold they possess, to put reflective tops on steel fence posts by coating them uniformly with reflective material in the form of glass beads in a clear binder (a very common material nowadays), the "mark" will no longer be capable of distinguishing appellant's goods from those of others. Capability of distinguishing, within the meaning of section 23 of the Lanham Act, 15 U.S.C. § 1091, is a matter which must be viewed in the light of future possibility.

Secondly, it is argued that appellant's motivation or intent in adopting the mark as shown by the facts of record was to select an indication of origin in accordance with the common practice of the trade. We would give weight to the argument if that were all it had done, as by applying another distinctive color with no functional significance. But here we must agree with the board that function is the "immediate aim." Accepting appellant's intent, there was clearly an additional motive. One might almost say that appellant's officers had a "flash of genius," but they did not reckon with legal consequences.

On the matter of making advertising expenditures under a wrong theory of the legal situation, see our recent opinion in Weiss Noodle Company v. Golden Cracknel and Speciality Company, 290 F.2d 845, 48 CCPA 1004. This will dispose of the third argument, that appellant's advertising expenditures have cre-

---

1. We do not know the sense in which the examiner used the term "weave," but it appears appropriate to this case. Webster's New Collegiate Dictionary, 2d ed., gives two relevant meanings:

"2. To fabricate by or as by interlacing; as, to *weave* a plot. \* \* \*— v.i. \* \* \* 3. To move from side to side repeatedly; to move in a devious and intricate course; as, to *weave* through a crowd."

ated a public consciousness that the reflective top indicates origin as shown by the affidavits.

Finally, appellant comes back to the argument that its mark is a distinctive design to which it has exclusive rights. We quote the argument:

"Appellant's design is non-functional, even though applied at the top of the post. Reflective coating can readily be applied in other designs at the top of the post. It can be applied in a series of horizontal stripes. It can be applied in a series of vertical stripes. It can be applied in inclined stripes. It can be applied in a plurality of broken lines. Circles and curves may be employed as well as straight lines. Appellant is not attempting to eliminate freedom to copy the functional feature, the reflective coating, nor is appellant attempting to eliminate the freedom to place the functional reflective coating at the top of the post. Appellant seeks registration only for the reflective coating in the non-functional design shown."

Here we have an explanation of what appellant intends the meaning of its disclaimer to be, namely, we alone may coat the top solidly while others are free to use special designs.

Here we have appellant's admission that reflective coating on the top of a fence post *is functional.*

Here we have the ultimate contention that all appellant relies on for registrability in this case is the distinctiveness of its *"design."* The short answer is that there is no design. While the argument recites a number of possible *arbitrary* designs, appellant's own design is chimerical. The solicitor's brief contains a very practical answer to this argument, of which we approve, and which occurred to us independently, as follows:

"In this case, a simple method of applying the functional reflective coating to the functionally designed metal post is to suspend the post top-downwards and dip it into the coating supply. This method of coating will inevitably produce the coating design shown in appellant's drawing. To permit appellant to assert trademark rights in its alleged mark would clearly have the effect of unjustifiably giving appellant a perpetual monopoly on the simplest and cheapest use of a simple process of applying a functional reflective coating to a functionally designed metal fence post."

If there is anything further to be said on the legal aspects of the case, we feel it has been said in the cases above cited and in the authorities therein relied on.

The decision of the board is *affirmed.*

Affirmed.