**SCHWINN BICYCLE COMPANY,**
a corporation

v.

**MURRAY OHIO MANUFACTURING COMPANY, a corporation.**

**Civ. A. No. 5964.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Oct. 29, 1971.

Maclin P. Davis, Jr., Robert C. Hendon, Jr., Waller, Lansden, Dortch & Davis, Nashville, Tenn., Malcolm McCaleb, William E. Lucas, Horton, Davis, McCaleb & Lucas, Chicago, Ill., for plaintiff.

W. W. Berry, Bass, Berry & Sims, Nashville, Tenn., Kevin E. Joyce, Edward M. Prince, Cushman, Darby & Cushman, Washington, D. C., for defendant.

## MEMORANDUM OPINION

MORTON, District Judge.

The plaintiff, Schwinn Bicycle Company, an Illinois corporation with its principal place of business in Chicago, Illinois, sues the defendant, Murray Ohio Manufacturing Company, an Ohio corporation with its principal place of business in Nashville, Tennessee, alleging the infringement of a United States trademark, No. 570,518, in violation of 15 U.S.C. § 1051 et seq. Jurisdiction is asserted under 28 U.S.C. § 1332 by virtue of there being a diversity of citizenship, and the alleged amount in controversy exceeding $10,000, exclusive of interest and costs.

The defendant filed a counter-claim, asserting jurisdiction under 28 U.S.C. § 1338(a) and 15 U.S.C. §§ 1119–1121, seeking cancellation of the plaintiff's registration of the trademark in question on the ground that the alleged trademark is not a bona fide trademark. Defendant maintains that the trademark is functional and does not serve the purpose of indicating the origin of the goods. Defendant additionally seeks cancellation of the registration on the grounds that the plaintiff obtained said registration by reason of fraud and concealment in that plaintiff withheld information as to the functional nature of the mark from the officials of the Patent Office.

The plaintiff, formerly known as Arnold, Schwinn & Co., has for 75 years been engaged in the manufacture and sale of bicycles, parts and accessories. One of the necessary items in the manufacture of a bicycle is a bicycle rim. In the case of a lightweight rim, the rim is formed, after certain machine processing, by bringing together two pieces of circular steel and joining them by a weld, sometimes referred to as a seam weld. The condition which was formed by the welded seam was, in trade circles, deemed unsightly, and for appearance purposes a treatment of this weld was and is considered necessary. For many years the accepted method of treatment was to grind the weld so as to bring it in alignment with the attached pieces of steel, polish the same, and then apply chrome to the entire rim. In this cosmetic treatment of the seam weld, considerable cost was incurred in polishing out the metal.

Prior to July 9, 1949, the plaintiff decided to knurl the inner surface of the rim. Upon inspecting the first of the knurled rims, it became apparent to the plaintiff that they had stumbled onto the very type of identifying mark that they had been seeking. Thereafter, on July 9, 1949, plaintiff, in the name of its predecessor Arnold, Schwinn & Co. filed an application for a trademark in the following language:

"The trade-mark consists of two endless parallel lines, each consisting of a multiplicity of cross parallel lines, knurled into the inner face of a bicycle rim of metal on opposite sides of the spoke apertures formed in such rim."

The trademark, according to the application, was first used on January 15, 1949, and was likewise first used in commerce among the several states on the same day. Thereafter, according to the United States Patent Office, considerable difficulty was experienced by the plaintiff in obtaining approval of the design as a trademark because the examiner expressed reservations as to whether this trademark was of such a distinguishable nature as to be subject to registration. The plaintiff persisted in pursuing its application, and was successful in convincing the examiner that the alleged trademark was not merely decora-

tive ornamentation. In a communication to the Commissioner of Patents dated September 28, 1950, the plaintiff requested, "If after considering this communication the examiner believes that embellishment is the purpose and effect of applicant's mark, we request the privilege of filing, as an exhibit to this application, one of the applicant's rims carrying the knurled-in subject mark." In an affidavit filed with the Patent Office, Frank W. Schwinn, the former president of the plaintiff company, stated:

"Applicant has chosen a trademark for its rims and wheels which not only indicates the origin of the product, but which also does not detract from the appearance of the rim when it is used for its intended purpose."

After filing numerous additional affidavits and appearing at subsequent hearings, the files of the Patent Office indicate that the application was examined and passed for publication on October 15, 1952, and notice of allowance was issued on January 19, 1953. Despite the fact that the plaintiff through its president knew of the economic value of knurling, acknowledged in writing on November 6, 1951, the Patent Office was never advised of such fact. An examination of the file of the Patent Office fails to reveal that the question of functionality was ever presented to the Commissioner or raised by the Commissioner.

Initially, at the time of the application for the trademark, the plaintiff was manufacturing and marketing wheels which had two welds on the inner surface of the rim which were hidden by knurls. Thereafter, a lightweight rim was made of tubular steel which required only one welding seam, and thus one knurling process was used.

Knurling in and of itself was not a new discovery. Knurling wheels were attached to lathes and were used for the purpose of making indentations on metal products to impart friction for resistance. However, apparently, at least in the United States, knurling had not been used to cover the welding seam on the inner surface of a bicycle wheel.

Beginning in 1949, and to this date, the plaintiff has manufactured and distributed bicycle rims, both through the distribution of bicycles and as accessory parts, which had this knurling design thereon. A Schwinn wheel could be identified by a casual glance by the knurling on the inner surface of the wheel. In addition to the knurling, of course, the name of the Schwinn Company was stamped on the rim. However, at no time since 1949 has there been any designation on the rim which indicated that a trademark had been registered.

In 1964, the defendant began to manufacture for marketing a tubular bicycle rim. In order to eliminate cost for competition purposes, the defendant sought a method to camouflage the unsightly seam weld appearing on its rim. Defendant sought to eliminate the grinding and polishing process because of the attendant economic expense. One of defendant's employees examined a Schwinn bicycle rim and noticed the results produced by the knurling technique. He thereupon obtained the knurling wheel from a lathe owned by the defendant and imprinted a knurling design on one of defendant's experimental rims. This knurling imparted sixteen parallel marks to the inch as distinguished from thirty-two parallel marks used by Schwinn. However, these sixteen marks sufficiently concealed the weld mark to the satisfaction of the defendant. The defendant asserts, and there is no proof to the contrary, that it had no knowledge that Schwinn was claiming that its mark was a registered trademark. The defendant asserts, and it is uncontroverted, that by use of the knurling process, two beneficial items of an economic nature are attained. One is the loosening of the scales made by the welding process prior to the acid bath, and the other is the elimination of the grinding and polishing process. Subsequently, defendant adopted the knurling technique for its tubular rim. Be-

ginning in 1965, the defendant marketed its bicycle wheel and stamped thereon the legend "M. O. Mfg. Co.," indicating the origin of the wheel.

By letter dated May 18, 1970, from Schwinn's attorney to Murray Ohio Manufacturing Company, plaintiff claimed that the defendant was infringing its United States Trademark Registration No. 570,518, dated February 17, 1953. By letter dated July 27, 1970, the defendant refused to discontinue the use of the parallel lines knurled into the inner face of its bicycle rim. The present suit ensued.

The plaintiff's proof consisted of testimony by two of its employees and three operators of bicycle sales and repair shops. The substance of the proof was that, by a quick glance, any person who is a member of the trade operating a bicycle shop or selling bicycles could identify a Schwinn wheel by seeing the knurling on the inner surface of the bicycle rim. Emphasis was placed on the fact that rims normally are stored at some height above the floor and a visual examination of the rims when stored at such heights would not necessarily determine their origin, in the absence of the knurling. In addition, proof was introduced to the effect that in one bicycle shop, two of the mechanics could not read and thus they selected bicycle rims based on the knurling. Evidence was also introduced that, in one instance, confusion has existed at one of the local Nashville Firestone retail outlets concerning the identity of a bicycle rim which had knurling thereon. The confused individual apparently looked only at the knurling and not at the name imprinted on the respective rim. Stamped into the defendant's rims as well as stamped into the plaintiff's rims is the name of the respective manufacturer, evidencing the source and origin of the rim. No proof was introduced to show confusion in the minds of the purchasing public. The only evidence introduced was directed at confusion, or possible confusion, in the minds of individuals who were operating sales rooms and/or bicycle repair shops. No contention was made that any confusion existed in the minds of any of these individuals if they looked at the legend imprinted on the rim showing the source and origin of the product. No proof was introduced that any confusion existed in the minds of individuals who ordered bicycle rims or bicycle wheels, although one person mistakenly sent a Murray rim to Schwinn for repair. No proof was introduced that the bicycle rims were purchased because of the attractiveness of the knurling design. For all practical purposes, with minor exceptions, the basic thrust of the proof was that certain storage problems were eliminated and would be eliminated if only one bicycle manufacturer were allowed to use the knurled inner surface. No proof was introduced that the defendant did not, in the printing of its name on the bicycle rim, meet the same standards and qualifications, size and character of its name as used by other manufacturers in the bicycle industry. No proof of any survey of consumer reaction to the Schwinn or Murray Ohio bicycle rim was introduced; no proof was introduced reflecting that the consuming public was interested in whether or not the rims on their bicycles were manufactured by Schwinn or by some other company; no proof was introduced that one wheel was superior to the other in quality or use, but as stated above, the primary thrust of the plaintiff's proof was inconvenience among dealers and repair shop personnel.

In its complaint Schwinn alleged that defendant Murray was guilty of both trademark infringement and unfair competition in using knurled markings to mask the weld mark on its bicycle rims. Schwinn seeks an injunction against further alleged violations, along with an accounting of defendant's profits and the damages suffered by plaintiff as a result of defendant's alleged trademark infringement and unfair competition.

Murray in its answer denied any trademark infringement or unfair competition violations, alleging primarily that

Schwinn's alleged trademark was invalid as serving a functional purpose. Murray asks that the Court cancel the registration of Schwinn's mark as provided in 15 U.S.C. § 1119, and counterclaims for an award of damages allegedly suffered by defendant as a result of this action as provided in 15 U.S.C. § 1120. In its counterclaim for damages, Murray seeks an award of reasonable attorneys' fees, and disbursements and costs for Schwinn's alleged "fraudulent" registration of the knurled markings.

The principal issues as delineated by the pretrial order are:

(1) Is the plaintiff's trademark valid?

(2) Has the defendant infringed said trademark?

(3) Is plaintiff entitled to an injunction and damages?

(4) Was fraud practiced on the Office of Patents so that plaintiff's registered trademark should be cancelled?

(5) Is defendant entitled to costs and attorneys' fees?

Is the plaintiff's trademark valid? If so, has the defendant infringed said trademark?

The Lanham Trade-Mark Act defines a trademark as including "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127. A trademark is defined by the Restatement of Torts, Vol. III, § 715 (1938 Ed.) as:

" . . . any mark, word, letter, number, design, picture or combination thereof in any form of arrangement, which

(a) is adopted and used by a person to denominate goods which he markets, and . . .

(b) is not . . . a designation descriptive of the goods or of their quality, ingredients, properties or functions, and

(c) the use of which for the purpose stated in Clause (a) is prohibited neither by legislative enactment nor by an otherwise defined public policy."

The purpose of a trademark is to denote the origin of the goods. John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314, 316 (7th Cir. 1961); Clairol Incorporated v. Gillette Company, 389 F.2d 264, 269 (2d Cir. 1968); Reynolds & Reynolds Co. v. Norick, 114 F.2d 278, 281 (10th Cir. 1940); Application of Simmons Co., 278 F.2d 517, 519, 47 C.C.P.A. 963 (1960). A trademark grants the owner a perpetual monoploy in the use of that mark. Application of Pollak Steel Company, 314 F.2d 566, 570, 50 C.C.P.A. 1045 (U.S.C.C.P.A.1963). Registration under the Lanham Act merely confers jurisdiction upon the federal district courts to hear and decide an action for infringement of a registered trademark and does not enlarge the trademark owner's substantive rights. Best & Co. v. Miller, 67 F.Supp. 809 (S.D.N.Y.1946), aff'd 167 F.2d 374 (2d Cir. 1948); Academy Award Products v. Bulova Watch Co., 90 F.Supp. 12 (S.D.N.Y.1950). Registration of a trademark is at best but a method of recording for the purpose of serving notice of a claim of ownership, and informing the public and dealers with reference thereto. B. B. Pen Company v. Brown & Bigelow, 92 F.Supp. 272, 274 (D.Minn.1950), aff'd 191 F.2d 939 (8th Cir. 1951), cert. denied, 343 U.S. 920, 72 S.Ct. 678, 96 L.Ed. 1333 (1952). It is elementary that the right to a trademark is not acquired by registration but stems from prior appropriation and use. Tillamook County Cream Ass'n v. Tillamook Cheese & D. Ass'n, 345 F.2d 158, 160, 161 (9th Cir. 1965).

A rebuttable presumption that the alleged trademark is valid arises upon registration with the Office of Patents. Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774, 779 (2d Cir. 1964). The presumption of validity being rebuttable, a proper defense to a trademark infringement action is the in-

validity of the mark. G. Leblanc Corp. v. H & A Selmer, Inc., 310 F.2d 449 (7th Cir. 1962).

■ A functional feature may not be the subject of exclusive appropriation and use, and such a feature is not entitled to trademark protection. Sylvania Electric Products v. Dura Electric Lamp Co., 247 F.2d 730 (3rd Cir. 1957); James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 128 F.2d 6 (6th Cir. 1942); J. C. Penney Co. v. H. D. Lee Mercantile Co., 120 F.2d 949 (8th Cir. 1941). An object performing a utilitarian function may not be registered as a trademark even if it also identifies the plaintiff's product. Alan Wood Steel Company v. Watson, 150 F.Supp. 861 (D.D.C.1957). A novel appearance that is functional in character is not subject to exclusive appropriation as a trademark. J. R. Clark Company v. Murray Metal Products Company, 219 F.2d 313, 320 (5th Cir. 1955). If a feature is functional in character, defendant has as much right to use it as does plaintiff, even though plaintiff may have been the originator. Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., 202 F.2d 172, 176 (3rd Cir. 1953). The basic policy which forbids the allowance of a trademark in functional features of a product is the policy to encourage and protect free and open competition. Pagliero v. Wallace China Co., 198 F.2d 339, 343, 344 (9th Cir. 1952).

■ The validity of an alleged trademark registered under the Lanham Trade-Mark Act with the Office of Patents may be collaterally attacked as a defense to a trademark infringement complaint. James Heddon's Sons v. Millsite Steel & Wire Works, Inc., supra; Sylvania Electric Products, Inc. v. Dura Electric Lamp Co., supra.

The Sixth Circuit has adopted the broad Restatement of Torts, § 742, definition of functionality. West Point Mfg. Co. v. Detroit Stamping Co., 222 F.2d 581 (6th Cir. 1955). Restatement of Torts, Vol. III, § 742 (1938 Ed.) provides that a feature of nonpatented goods is functional "if it affects their purpose, action, or performance, or the facility or economy of processing, handling or using them . . .." West Point Mfg. Co. v. Detroit Stamping Co., supra, at 591; James Heddon's Sons v. Millsite Steel & Wire Works, Inc., supra, at 13. See also Zippo Mfg. Co. v. Rogers Imports Co., 216 F.Supp. 670 (S.D.N.Y. 1963) which adopts the Restatement of Torts definition of functionality, citing West Point Mfg. Co. v. Detroit Stamping Co., supra, and providing a thorough discussion of applicable case law.

■ The evidence is uncontradicted that the various manufacturers of bicycle rims in the United States consider it commercially necessary to mask, hide or camouflage the roughened and charred appearance resulting from welding the tubular rim sections together. The evidence presented indicates that the only other process used by bicycle rim manufacturers in the United States is the more complex and more expensive process of grinding and polishing. Frank Schwinn, in his letter to Schwinn's attorney, M. Malcolm McCaleb, dated November 6, 1961 (Plaintiff's Exhibit No. 6), noted that the surface of the rim became roughened during seam welding "to the point where considerable cost in polishing out the metal was involved." Thus, it is clear that the feature of knurled markings on the inner facing of a bicycle rim "affects . . . the facility or economy of processing" the rim. Mr. Schwinn's letter evidences this recognition of economic saving realized from knurling. The Court has no alternative but to declare the knurled markings to be functional. (See Appendix attached hereto.) To hold otherwise would effectively grant Schwinn a perpetual monopoly in a simpler and more economical process necessary to serve the essential function of masking the weld mark. Since all of Schwinn's competitors would be perpetually forbidden from utilizing this more efficient process, free competition and the interests of the consuming public would suffer. The Court finds that the law of trademarks does not contemplate granting a perpetual monopoly

in such a feature and process which provides such an economic saving. Plaintiffs offered no evidence of any alternative process which could be used to accomplish the same cosmetic purpose at such a minimal cost.

The purpose of a trademark is to denote the origin of the goods. John Morrell & Co. v. Reliable Packing Co., *supra*; Clairol Incorporated v. Gillette Company, *supra*; Reynolds & Reynolds Co. v. Norick, *supra*; Application of Simmons Co., *supra*. At best the knurled markings merely denote the origin of the rim in an incidental sense. The marking goes beyond the aspect of merely identifying the product, as the process was initiated by Schwinn to reduce the "considerable cost" incident to grinding and polishing the rim surface. Schwinn merely "stumbled onto" the idea of using the knurling marks as a trademark after the markings were knurled into the rim for cost and efficiency purposes. "Any device, the immediate aim of which is to serve a functional mission cannot be granted the legal protection registration achieves . . .." Application of Pollak Steel Company, *supra*, at 569. The fact that there is another way to mask the weld mark is immaterial. *See* Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., *supra*, at 175, 176, n. 10. Knurling is a means of accomplishing a purpose essential to the commercial success of the product. To permit Schwinn to assert trademark rights in the knurled markings would clearly have the effect of unjustifiably giving plaintiff a perpetual monopoly in the simplest and cheapest process of masking the unsightly residuary of welding together the tubular sections of the rim.

Plaintiff Schwinn relies heavily on the ancient and oft-cited *"Horse Nail"* case (Capewell Horse Nail Co. v. Mooney, 172 F. 826 (2d Cir. 1909)), which states that a mark is not prevented from operating as a valid trademark because it also incidentally enhances the appearance of the goods. However, the knurled markings in the present case serve primarily the function of masking the roughened weld mark, a requisite function in the manufacture of the rims. In the *Horse Nail* case the markings on the underside of the nail head served no functional purpose. *See* Goodyear Tire & Rubber Co. v. Robertson, 18 F.2d 639, 641, 642 (D.Md.1927) for its discussion distinguishing Capewell Horse Nail Co. v. Mooney, *supra*. The primary purpose of the nail head markings in the *Horse Nail* case was to indicate the origin of the nails. The primary function of the knurled markings in this case is to mask the weld mark, not to indicate the origin of the bicycle rim to members of the consuming public. The use of the knurled markings as a trademark was merely an incidental afterthought in the mind of Frank Schwinn. Moreover, the Southern District of New York, a court of the Second Circuit, appears to no longer follow the aforementioned language in the *Horse Nail* case.

"  . . . I believe that the applicable test under decisions in this Circuit is, and should be, that a feature of goods is functional at least if it affects their purpose, action, or performance, or the facility or economy of processing, handling or using them, and possibly also if it affects the buyer's choice because of its pleasing appearance." Zippo Mfg. Co. v. Rogers Imports, *supra*, at 695.

This rule is essentially the § 742 of the Restatement of Torts rule as to functionality.

In any case, this Court is governed by the Restatement of Torts rule as to functionality which requires the Court to find as a functional feature anything which "affects . . . the facility or economy of processing . . ." the bicycle rims as the knurled markings clearly do in this case.

Schwinn correctly asserts that a mark registered with the Office of Patents is presumed to be valid. However, as to the facts in this case, any presumption of validity is substantially weakened by the failure on the part of plaintiff to disclose to the Office of Patents that the markings served the function of

masking the weld mark. Sylvania Electric Products v. Dura Electric Lamp Co.* Had Schwinn, in any of its communications, made known to the Office of Patents that the knurled markings served the function of masking the weld mark, the presumption of validity arising from registration would be stronger. The evidence of functionality introduced by defendant Murray easily rebuts this presumption of validity, which is weak under the given circumstances of registration.

■■■ Schwinn's alleged trademark has become incontestable under 15 U.S.C. § 1115(b). This provision was intended to protect a registrant from having its mark cancelled by a prior user claiming superior rights. John Morrell & Co. v. Reliable Packing Co., *supra*. However, incontestability may not be used to protect an inherently defective mark. John Morrell & Co. v. Reliable Packing Co., *supra*; Tillamook County Cream Ass'n v. Tillamook Cheese and Dairy Ass'n, *supra*, at 163; Haviland & Co. v. Johann Haviland China Corp., 269 F. Supp. 928, 936, 954 (S.D.N.Y.1967). More importantly, the registrant may not rely upon the incontestability provision as an "offensive" weapon in a trademark infringement action. John Morrell & Co. v. Reliable Packing Co., *supra*; Tillamook County Cream Ass'n v. Tillamook Cheese and Dairy Ass'n, *supra*, citing Callmann, Unfair Competition and Trade-Marks, 2d Ed., Vol. 4, § 93.3, (c) (1), 2075, 2076. Thus it is clear that an inherently defective trademark, one not entitled to registration with the Office of Patents as being an invalid mark at common law, is not rendered valid by becoming incontestable under § 1115(b).

■■■ The Court finds that Schwinn's registered trademark, Registration No. 570,518, is not a valid trademark in that the knurled markings are functional and therefore not entitled to exclusive appropriation as a trademark. The Court bases its decision on the established legal principle that a functional feature cannot serve as a trademark. Considerations of public policy which direct disfavor toward monopolization of this type of feature underlie the Court's decision. As stated before, to hold the knurled markings to be a valid trademark would be to grant to Schwinn a perpetual monopoly in an unpatented feature, having the potential to inhibit free competition with its potentially adverse effects upon the interests of the consuming public. This knurling process which reduces the cost of manufacturing the bicycle rims should not be forbidden from benefiting competing manufacturers and the consuming public. The Court reasons that competing manufacturers should be allowed the opportunity to produce the rims at a lower cost and by a simpler process, and that consumers should not be foreclosed from the opportunity of purchasing the rims, and bicycles with these rims, at the potentially lower cost. *See* Application of Deister Concentrator Company, 289 F.2d 496, 499, 48 C.C.P.A. 952 (1961), citing J. R. Clark v. Murray Metal Products Co., *supra*; Alan Wood Steel Co. v. Watson, *supra*, at 862. *See also* Application of Shakespeare, 289 F.2d 506, 508, 48 C.C.P.A. 969 (1961).

■■ In summary, the Court finds that Murray did not infringe Schwinn's registered mark, the invalidity of a trademark being a defense to an action for trademark infringement. Schwinn is therefore not entitled to an injunction against further use by Murray of knurled markings on its bicycle rims, nor is Schwinn entitled to any damages from Murray due to Murray's use of knurled markings.

Was fraud practiced upon the Patent Office so that plaintiff's registered mark should be cancelled?

Murray asks the Court to order the cancellation of the registration of the Schwinn trademark on the ground that Schwinn "fraudulently obtained" the registration of the mark. Title 15 U.S.C. § 1115(b) (1) provides that one defense to an assertion that a registered trademark

---

* 144 F.Supp. 112, 128 (D.N.J.1956) aff'd 247 F.2d 730 (3rd Cir. 1957).

has become incontestable is that the registration was "obtained fraudulently." Title 15 U.S.C. § 1119 empowers the Court to cancel registration of trademarks:

"In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the Court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby."

■ It is well settled that a corporation speaks through its officers and agents. In an affidavit to the Commissioner of Patents, dated July 9, 1949, W. J. Fritz, Secretary of Schwinn, states that "no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use such trade-mark in commerce . . .." Frank W. Schwinn, president of plaintiff in an affidavit to the Commissioner of Patents dated November 5, 1951, stated that he considered "that the subject trade-mark has been and is a proper trade-mark of Arnold, Schwinn & Co." Frank W. Schwinn, in his letter to his attorney Malcolm McCaleb on November 6, 1951, indicated that knurling was initiated to cover the roughened weld mark due to the "considerable cost" involved in polishing out the metal. The Court construes the language to indicate that knurling was initiated by Schwinn to reduce the costs of masking the weld mark. This comprises substantially all of the evidence that any officer of Schwinn engaged in fraud to aid in the company's obtaining the registration of the knurled markings as a trademark.

■■ The Court holds that sufficient evidence was not presented to justify the Court's finding that any officer engaged in any fraud to aid Schwinn in obtaining the registration of the mark as forbidden by the statute. The Court construes 15 U.S.C. § 1115(b) (1) to impose a duty upon the applicant for registration to not knowingly make any misleading or inaccurate statements in affidavits forming a part of the application for registration. cf. Bart Schwartz International Textiles, Ltd. v. F. T. C., 289 F.2d 665, 669, 48 C.C.P.A. 933 (1961), which interprets the "fraudulently obtained" provision of 15 U.S.C. § 1064. No sufficient evidence was presented to justify a holding that any officer of Schwinn knowingly made any inaccurate or misleading statement to the Office of Patents. The statements of the Schwinn officials can reasonably be construed to have resulted from inadvertence or ignorance of the applicable law of trademarks. cf. Nissen Trampoline Company v. American Trampoline Co., 193 F.Supp. 745, 750 (S.D.Iowa 1961) for a discussion of "fraud" under 15 U.S.C. § 1120.

Did the fact that the Schwinn attorneys failed to inform the Office of Patents of the functional purpose of the knurled markings constitute fraud upon the Office of Patents? While the attorneys of Schwinn are presumed to have known the law, the Court recognizes that a weak argument can be made that the knurled markings are registrable with the Office of Patents. No evidence was introduced to show that Schwinn's attorneys knowingly misled the Office of Patents into registering the mark. From the evidence presented, the Court is not willing to infer that Schwinn's attorneys perpetrated a fraud on the Office of Patents. Therefore, the Court finds that Schwinn did not fraudulently obtain the registration of the mark. The Court finds that Schwinn's mark should not be cancelled on the ground that the registration was fraudulently obtained.

Is defendant entitled to costs and attorneys' fees?

Defendant Murray contends that Schwinn is liable for reasonable attor-

neys' fees, disbursements and costs for the alleged violation of 15 U.S.C. § 1120, which provides:

"Any person who shall procure registration in the Patent Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

Murray alleges violation of this provision on the ground that Schwinn failed to disclose to the Patent Office that the knurled markings served a functional purpose while stating to the Patent Office that it considered the knurled markings as a "proper trademark" (Affidavit of Frank W. Schwinn, president, to the U. S. Patent Office, November 5, 1951) and "no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use such trade-mark in commerce . . . ." (Application to Commissioner of Patents by W. J. Fritz, secretary of Schwinn, dated July 7, 1949).

Before Schwinn can incur liability under this provision (15 U.S.C. § 1120), Murray must present sufficient evidence to support a finding that Schwinn procured registration by a declaration or representation that is either incorrect or a willful attempt to mislead the Patent Office. Simmonds Aerocessories v. Elastic Stop Nut Corp., 158 F. Supp. 277 (D.N.J.1958). The evidence does not support a finding that Schwinn procured registration by either a false or fraudulent representation or declaration.

The mere fact that Schwinn knew that the knurled markings masked the weld mark and yet stated to the Patent Office that it considered the markings a proper trademark which to the best of its knowledge no one else had the right to use does not constitute such a false or fraudulent representation or declaration. *See* Nissen Trampoline Company v. American Trampoline Co., *supra*.

Murray presented insufficient evidence for the Court to find that Schwinn, through any of its officers or attorneys, made any intentionally misleading statements to the Patent Office which led to the registration of the alleged trademark. Murray presented no direct evidence to indicate that Schwinn did not honestly believe that it was entitled to registration of the markings. Thus, the Court will not hold that statements by Schwinn to the effect that it believed the alleged trademark was entitled to registration are incorrect representations or declarations leading to the registration of the markings. Nor is the Court willing to infer fraudulent intent on the part of Schwinn in the absence of any direct evidence that Schwinn knowingly made any statement designed to mislead the Patent Office into registering its alleged trademark.

The Court finds that Schwinn did not violate 15 U.S.C. § 1120. Murray is not entitled to recover any costs or attorneys' fees from Schwinn.

In summary, the Court finds:

(1) Schwinn's trademark is invalid;

(2) Murray did not infringe Schwinn's alleged trademark;

(3) Schwinn is not entitled to an injunction and damages;

(4) Schwinn did not practice fraud on the Patent Office, and thus, Schwinn's registration with the Patent Office should not be cancelled on the grounds that registration was "fraudulently obtained";

(5) Murray is not entitled to costs and attorneys' fees as the Court finds that Schwinn did not violate 15 U.S.C. § 1120.

An appropriate order will be entered by the Court.

### APPENDIX

In the following cases, the courts found the mentioned features to be functional. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73

(1938)—the pillow-like shape of a shredded wheat biscuit

Best Lock Corporation v. Schlage Lock Company, 413 F.2d 1195 (U.S.C.C.P.A. 1969)—a figure 8 lock configuration

Application of Shenango Ceramics, Inc., 362 F.2d 287, 53 C.C.P.A. 1268 (1966)—under-rim configuration of china dishware

General Radio Company v. Superior Electric Company, 321 F.2d 857 (3rd Cir. 1963)—structural elements of autotransformer because they contribute to utility and efficiency of housing and general appearance

Application of Pollak Steel Company, 314 F.2d 566, 50 C.C.P.A. 1045 (1963)—coating of the top few inches of steel fence with reflective material

Application of Deister Concentrator Company, 289 F.2d 496, 48 C.C.P.A. 952 (1961)—rhomboidal design of ore concentrating and coal cleaning tables

Norwich Pharmacal Company v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959)—the medicinal ingredients and the color pink in Pepto-Bismol stomach medicine

Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646 (2d Cir. 1959)—size and shape of ink marking device, i. e., "Magic Marker" held to be highly functional

Sylvania Electric Products v. Dura Electric Lamp Company, 247 F.2d 730 (3rd Cir. 1957)—blue dot symbol on photographic flashbulbs as it served as an air leakage indicator

Upjohn Company v. Schwartz, 246 F.2d 254 (2d Cir. 1957)—the physical appearance, size, shape and color of medicinal capsules or tablets

West Point Manufacturing Company v. Detroit Stamping Company, 222 F.2d 581 (6th Cir. 1955)—certain features of a toggle clamp

J. R. Clark Company v. Murray Metal Products Company, 219 F.2d 313 (5th Cir. 1955)—novel appearance of flat metal top of an ironing table

Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., 202 F.2d 172 (3rd Cir. 1953)—all parts of a particular can opener

Pagliero v. Wallace China Co., 198 F.2d 339 (9th Cir. 1952)—design on china dishware being not merely indicative of source

Smith, Kline & French Laboratories v. Clark & Clark, 157 F.2d 725 (3rd Cir. 1946); cert. denied 329 U.S. 796, 67 S.Ct. 482, 91 L.Ed. 681 (1946)—scoring on pills to make breaking easier, concave bottom, beveled edges, and the white color of the pills

James Heddon's Sons v. Coe, 79 U.S.App. D.C. 317, 146 F.2d 865 (1945)—herringbone design stamped or painted on artificial fishing plugs and casting baits because the design does more than identify the product

James Heddon's Sons v. Millsite Steel & Wire Works, 128 F.2d 6 (6th Cir. 1942), cert. denied 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 (1942)—shape, size and markings of artificial fishing lures

J. C. Penney Co. v. H. D. Lee Mercantile Co., 120 F.2d 949 (8th Cir. 1941)—design of bib pockets in workmen's overalls

Sparklets Corporation v. Walter Kidde Sales Co., 104 F.2d 396, 26 C.C.P.A. 1342 (1939)—a groove in metal capsule designed to contain compressed gas

Electric Auto-Lite Co. v. P. & D. Mfg. Co., 78 F.2d 700 (2d Cir. 1935)—parts of an automobile ignition system

In re Winchester Repeating Arms Co., 69 F.2d 567, 21 C.C.P.A. 1016 (1934)—gold colored shift button in trigger of double-barrel shotgun which determined which barrel would fire

In re National Stone-Tile Corporation, 57 F.2d 382, 19 C.C.P.A. 1101 (1932)—grooves in the edge of the webs and end walls of hollow tile stating that the public would not look upon the grooves as a trademark but would likely conclude that

the grooves were formed as a convenient process of manufacture or to serve a useful function

In re Vertex Hosiery Mills, 45 F.2d 249 (U.S.C.C.P.A.1930)—run-stopping ridge knit into a stocking

In re Dennison Mfg. Co., 39 F.2d 720, 17 C.C.P.A.1987 (1930)—vase-like figure forming patch for tab as the shape or configuration of an essential part of an article held not intended to be protected by the common law or the trademark registration statutes

Goodyear Tire & Rubber Co. v. Robertson, 25 F.2d 833 (4th Cir. 1928)—diamond shaped projections impressed on tread of automobile tires

Pope Automatic Merchandising Company v. McCrum-Howell Co., 191 F. 979 (7th Cir. 1911), cert. denied 223 U.S. 730, 32 S.Ct. 527, 56 L.Ed. 633 (1912)—tacit holding that form and natural aluminum color of an electric vacuum cleaner were functional

Diamond Match Co. v. Saginaw Match Co., 142 F. 727 (6th Cir. 1906), cert. denied 203 U.S. 589, 27 S.Ct. 776, 51 L.Ed. 330 (1906)—two-tone, red and blue head of a sulphur match

Zippo Manufacturing Company v. Rogers Imports, Inc., 216 F.Supp. 670 (S.D. N.Y.1963)—windscreen and its holes around the wick of a cigarette lighter and the lighter's slim external shape

Interlego, A. G. v. Leslie-Henry Co., 214 F.Supp. 238 (M.D.Pa.1963)—interlocking feature of toy building blocks

Alan Wood Steel Company v. Watson, 150 F.Supp. 861 (D.D.C.1957)—tapered ridges arranged according to a particular pattern on flooring material

Steem-Electric Corp. v. Herzfeld-Phillipson Co., 29 F.Supp. 1011 (E.D.Wisc. 1939)—stippled finish on steam electric iron used to hide imperfections on the surface of aluminum castings and to reduce polishing costs; aff'd 118 F.2d 122 (7th Cir. 1940) though not specifically discussing the functional aspect of the finish