53 CCPA

### Application of SHENANGO CERAMICS, INC.
### Patent Appeal No. 7612.

United States Court of Customs and Patent Appeals.
June 23, 1966.

Albert L. Ely, Jr., Cleveland, Ohio, for appellant.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

MARTIN, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board [1] refusing to register [2] on the Principal Register a portion of the under-rim configuration shown in the drawing below as a trademark for "China dishware." [3]

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Reported in full at 143 USPQ 48 (1964).

2. Application serial No. 144,893, filed May 17, 1962, continuous use of the mark since on or about February 13, 1939, being alleged.

3. The application states:
 Applicant disclaims any representation of dishware apart from the contour of the under surface of the rim between the edge and foot, as shown. Although appellant in its brief and by its counsel at oral argument indicates that only the foot (pedestal) rib is disclaimed, we find it immaterial in this appeal whether only the middle (median) rib or that plus the edge (rim or perimetral) rib (roll) constitutes the mark as applied for.

China dishware incorporating such ribs was the subject of a U. S. utility patent 2,178,274, issued October 31, 1939 to R. Ratner. The patent was assigned to the appellant herein (or its predecessor), and that patent expired in 1956. The patent was directed to the use of a median rib as above shown on the undersurface of a tableware article such as a plate. The patent states:

* * * In virtue of its behavior in protecting the article against chipping, cracking and breaking as the result of vibratory stresses from impact-shocks received by the article, I call this rib the vibration-throttling rib. * * *

The patentee notes that pedestal ribs and perimetral ribs were then conventional, the former "allowing the articles to be stacked without extended face to face contact while in the kiln," and thus are "important in aiding manufacture of the article * * *." Although the perimetral rib had been used "with the idea of strengthening the flange * * *" of tableware, the patentee discovered the lifetime of such ware was shortened rather than prolonged.[4] The patentee teaches that:

Whether or not the perimetral rib is present, the vibration-throttling rib of the present invention has been found by actual test to act in precisely the way it should act to justify its designation as a vibration-throttling element. * * *

A second "important" advantage taught by the patentee to arise from the use of the ribs is that "convenient and safe handling of the articles is made possible when it is grasped in one hand only," because the space between the ribs affords "a finger stall or seat for naturally accommodating a finger of an adult's hand." The claims were directed to the middle rib, either with the pedestal rib or with both the pedestal and perimetral ribs.[5]

The examiner in refusing to register the "representation of goods" distinguished between containers that may serve as a trademark for the contents therein, and a "representation of goods themselves purporting to be trademarks for the same goods * * *." That point, however, was not the reason for final refusal to register below, nor is it the basis of our decision here. The basic reason for refusal, as stated by the examiner, was that the rib configuration is a functional feature:

* * * This configuration of goods is said to be a scientifically designed molded roll that reinforces the underside of the rim at its weakest structural point. The representation of

---

4. The patentee states:
 * * * The articles are roughly handled, and the extra ring-like mass established by the perimetral rib at the outer edge of the flange acts apparently in some way as an intensifier or multiplier of the vibratory stresses set up in the article when the latter is subjected to impact-shocks.

5. As an example, claim 1 reads as follows:
 1. In a platter-like article of tableware made of a single mass of shaped frangible material and of the type comprising a main central section and a rim-like complementary section extended outwardly and upwardly from and continuously all around said central section, and also of the type carrying a pedestal rib on its bottom, a vibration-throttling means forming part of said

single mass and including an endless rib running all around the underside of said complementary section, said second rib all around the same being spaced downward from the outer margin of said complementary section and upward from said pedestal rib, at least substantially the entirety of said second rib being at the underside of the article and such rib being of a uniform cross-section all around the article to provide an annularly evenly distributed mass of added material, said rib being of a height and of an average width each of which is at least from one-third to 40% of the thickness of the article at the locus of said rib.

Additional claims 2–4 dependent from claim 1 covered the rib spacing relationship, and claim 4 described a platter-like article of tableware having all three ribs.

this "exclusive patented double roll construction" is firmly believed not to be a trademark. The trademark is the name Rim-Rol,[6] which applicant has given to this utilitarian feature of the goods, but the construction feature of the goods themselves is not a trademark as defined in Section 45 of the Trademark Statute, and therefore, it is not a mark capable of distinguishing the goods as required by Section 2 of the Trademark Statute. * * *

The refusal to register was affirmed by a majority of the board (there was also a concurring minority opinion),[7] on the ground that the subject matter under consideration "is incapable of distinguishing applicant's goods from the goods of others because it is merely a functional feature of a product on which the patent has expired."

Thus this appeal presents the issue whether the preamble of section 2 (15 U.S.C. § 1052) and the definition of

6. Appellant submitted, apparently with the application for registration, a "Reference Manual" that makes reference to two word marks used in connection with the ribs (rolls). The first is "Rim-Rol":

*Shenango* **RIM-ROL**

**doubles the protection against rim-impact with its exclusive patented Double Roll construction!**

RIM-ROL is a scientifically designed, molded roll that reinforces the underside of the rim at its weakest structural point!

**Continued...**

The second is "Duo-Grip," the Manual stating in connection with the drawing below, "Try Duo-Grip * * * see for yourself how it gives slippery, busy hands a FIRMER GRIP! * * * reduces accidental dropping * * *":

7. The concurring member was of the opinion that as a matter of law "the said

design" was not a proper subject matter for registration as a trademark on the Principal Register, and stated, inter alia:

The question of whether or not one can, in the absence of a valid subsisting patent or copyright, acquire an exclusive right to the shape of an article or to the shape of a feature thereof, has been finally determined in the negative by the Supreme Court of the United States in Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661; and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669; * * *.

trademarks under section 45 (15 U.S.C. § 1127) preclude the registration on the Principal Register of the present three-dimensional configuration with its functional aspects. No section 2(f) issue is presented.

Appellant contends that the under-rim configuration falls within the statutory definition of a trademark, section 45, as it "includes any * * * symbol, or device * * *," and that the listing of configuration of goods in section 23 (15 U.S.C. § 1091) does not preclude registration on the Principal Register. Appellant also argues that section 2 of the 1946 Act is mandatory, that no trademark shall be refused registration "on account of its nature * * *" except for those grounds specifically set forth in subsections (a) to (e) under section 2, none of which include functionality. Thus appellant states:

All of the reasons advanced by the Examiner and the Board boil down to refusals to register appellant's mark because (a) of its mechanically functional nature or, (b) when used on ware also having a foot rib, such footed ware identified by appellant's mark was once patented. None of these "natures" of appellant's mark are included in the exceptions recited in sub-sections (a) to (e) of Section 2 of the Act. The decision below, accordingly, amounts to an attempt to amend the statutory mandate, by administrative decision, by adding "non-patented or non-patentable functional marks" as an additional exception to those now listed in subsections of Section 2 of the Act and/or further qualifying the present recital in the Section 45 definition of a trademark so that "any * * * symbol or device" should read "any * * * *unpatentable, nonfunctional* symbol or device."

■ Regarding the functionality of the under-rim configuration appellant's position is:

* * * Admittedly applicant's rim configuration was selected to function well as a vibration dampening configuration and to aid the gripping of the ware—while also serving as a distinctive identification. * * *

* * * * * *

* * * it should be pointed out that appellant in no way contends that its mark is non-functional; rather, if mechanical functionality is properly considered at all in determining a trademark's registrability under the 1946 Act, such mechanical functionality of applicant's device is not so non-arbitrary as to impair its obvious function as a distinctive identification of appellant's ware and, therefore, its registrability.

The distinction last quoted represents appellant's attempt to bring the instant under-rim configuration within the class of "shapes which can be monopolized because they are of such an arbitrary nature that the law does not recognize a right in the public to copy them, even if some incidental function is associated with them," In re Deister Concentrator Co., 289 F.2d 496, 48 CCPA 952, 965. By appellant's reading, the *Deister* case would permit the registration of a functional "symbol, or device" that is "not so non-arbitrary as to impair its obvious function as a distinctive identification of appellant's ware and, therefore, its registrability." We do not so read the *Deister* case, since that reading changes "incidental function" as not barring registration, to: incidental identification as mandatory of registration. We hold the present case to be controlled by the principles of law in *Deister,* and in In re Shakespeare Co., 289 F.2d 506, 48 CCPA 969. The under-rim configuration here is unregistrable on the Principal Register since it is functional and in essence utilitarian.

■■ It is our view that the expired utility patent is adequate evidence that the under-rim configuration here sought to be registered is indeed functional. We do not find the board to have erred in rejecting the contention that the present

configuration is registrable because its functionality is so incidental as to be "arbitrary" or a mere design. All the evidence points the other way. Appellant's arguments are futile "attempts to reduce it [functionality] to a *de minimis* status," *Deister*, supra, 289 F.2d at 504, 48 CCPA at 967.

██ We think that the 1946 Act is premised on the idea that only non-functional configurations may be registrable thereunder. As stated in truism (4) of the *Deister* case, 289 F.2d at 502, 48 CCPA at 963:

(4) A feature dictated solely by "functional" (utilitarian) considerations may not be protected as a trademark; but mere possession of a function (utility) is not sufficient reason to deny protection.

 Rather than adding an exception to section 2 or amending section 45, we are of the view that the terms of the Act provide for the result here. In the absence of other valid patent claims, a feature that is the subject of a utility patent goes into the public domain when the patent expires, Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 120–122, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 185, 16 S.Ct. 1002, 41 L.Ed. 118 (1896). Such a feature, being free to be used by any person, thus cannot be a "trademark [a "symbol, or device," section 45] by which the goods of the applicant *may be distinguished,*" section 2, 15 U.S.C. § 1052. [Emphasis added.] Similarly, the definition of a trademark under section 45, 15 U.S.C. § 1127, requires that the symbol or device "identify * * * and distinguish * * *" the goods of a manufacturer or merchant from those manufactured or sold by others. We think it the broad policy of the law that a functional feature cannot satisfy the requirements of those words.

As this court stated in the *Deister* case, 289 F.2d 505, 48 CCPA at 968:

It seems to us that this case perfectly exemplifies what we mean by a functional or utilitarian shape which is incapable of acquiring a legally recognizable "secondary meaning" or of becoming an enforceable trademark for the simple reason that, absent patent protection, the public has the right to copy the shape and enjoy its advantages. * * *

Although the patent claimed the middle or vibration-throttling rib in combination with a pedestal or foot rib, the result is no different where the configuration is present on a plate having no pedestal rib. The patent is taken only as *some* evidence, here conclusive, that the involved under-rim configuration is indeed functional. Thus the result here is not dependent on the precise scope of the patent claims.

We do not find In re Mogen David Wine Corp., 328 F.2d 925, 51 CCPA 1260, or In re Minnesota Mining & Mfg. Co., 335 F.2d 836, 51 CCPA 1546, to be apposite to this case. The *Mogen David* case involved the *design* or non-functional configuration of a container for goods and thus cannot stand as precedent on the functionality issue here. The *Minnesota Mining* case involved an arbitrary, non-functional configuration of goods. So far as is pertinent to registrability for federal trademark protection, we believe Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, to be consistent with the result reached herein.

For the foregoing reasons the decision of the board is affirmed.

Affirmed.

SMITH, Judge, concurs in the result.