**Application of the HOLLAENDER MANUFACTURING CO.**

**Patent Appeal No. 74–601.**

United States Court of Customs and Patent Appeals.

March 20, 1975.

Donald F. Frei, James S. Hight, Bruce Tittel, Cincinnati, Ohio (Wood, Herron & Evans, Cincinnati, Ohio, attorneys of record, for appellant. John J. Byrne, Washington, D. C. (Baker & McKenzie, Washington, D. C.), of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, Judges, and PHILIP NICHOLS, Judge, United States Court of Claims.

MARKEY, Chief Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 181 USPQ 603 (1974), upholding the denial of registration of a three-dimensional configuration as a trademark for cast aluminum fittings for joining lengths of tubing together. We affirm.

## Facts

The configuration sought to be registered is a raised rib disposed axially of a cast aluminum fitting. Threaded apertures extend through the ends of the rib and fitting for reception of Allen set screws. The mark is illustrated at 181 USPQ IV, which is a substitution for a drawing on page 605.

Using the fittings and tubing, a framework structure (e. g., a scaffold) may be constructed, tube ends being inserted into the fittings and secured by the set screws.

## Issue

The sole issue before us is whether the board committed reversible error in finding appellant's raised rib configuration essentially functional and, hence, unregistrable as a trademark.

## OPINION

Although an incidental utility might not preclude effectiveness as an indication of source, configurations having essentially utilitarian or functional purposes cannot be registered. As this court stated in Best Lock Corp. v. Schlage Lock Co., 413 F.2d 1195, 1199, 56 CCPA 1472, 1476 (1969):

> the *incidental* function should not by itself preclude trademark registrability if the other conditions precedent are present. That is a quite different situation from a configuration whose purpose is to provide a functional advantage. Where such a functional purpose exists, the rule is that of *Shenango*, [In re Shenango, 362 F.2d 287, 53 CCPA 1268 (1966)] namely, that the configuration is not registrable as a trademark. The reason is clear. If a configuration is functional in that sense, then everyone has the right to use the configuration for its functional purpose, subject only to such exclusive right for a *limited* time as *may* exist under the patent laws. [Original emphasis].

In In re Deister Concentrator Co., 289 F.2d 496, 506, 48 CCPA 952, 968 (1961),

though a functional configuration of the goods was denied registration, the court recognized that arbitrary shapes or structural features may be registrable, saying:

> Where a shape or feature of construction is in its concept arbitrary, it may be or become a legally recognizable trademark because there is no public interest to be protected. In such a case protection would not be lost merely because the shape or feature also serves a useful purpose. See In re Simmons Company, 278 F.2d 517, 47 CCPA 963.

■ Whether a configuration serves a functional or source-indicating purpose is a question of fact. As we pointed out in In re Honeywell, Cust. & Pat.App., 497 F.2d 1344, 1348, cert. denied, Dann v. Honeywell, 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974):

> When federal trademark rights have been sought for functional subject matter disclosed in a utility patent, the decisions of this court, notably * * [citing cases] * * * indicate that the acquisition of such rights will not be allowed in view of the "overriding public policy of preventing their monopolization, of preserving the public right to copy." In re Deister Concentrator Company, Inc., *supra*. These decisions turned upon the question whether or not the subject matter, for which federal trademark protection was sought, was of a functional nature, *i. e.*, in essence utilitarian or dictated for reasons of engineering efficiency. The utility patent present in each of those cases was used as *evidence* of the functionality of the involved subject matter.

A definition of "functional" is found in 3 Restatement of Torts § 742. Explaining the definition, Comment (a) to § 742 states:

> A feature of goods, or of their wrappers or containers, may be functional because it contributes to efficiency or economy in manufacturing them or in handling them through the marketing process. It may be functional, also, because it contributes to their utility, to their durability or to the effectiveness or ease with which they serve their function or are handled by users. When goods are bought largely for their aesthetic value, their features may be functional because they definitely contribute to that value and thus aid the performance of an object for which the goods are intended. Thus, the shape of a bottle or other container may be functional though a different bottle or container may hold the goods equally well. A candy box in the shape of a heart may be functional, because of its significance as a gift to a beloved one, while a box of a different shape or the form in which a ribbon is tied around the box may not be functional. Or a distinctive printing type face may be functional though the print from a different type may be read equally well. The determination of whether or not such features are functional depends upon the question of fact whether prohibition of imitation by others will deprive the others of something which will substantially hinder them in competition.

■ The scales of evidence in the record are tilted heavily toward a finding of functionality in appellant's rib configuration. The use of integral ribs to strengthen structural and other devices is well known. Trade literature concerning the fittings of appellant's competitors attributes a strengthening function to expansive, raised diamond configurations extending about set screws. The drawings of U. S. Patent No. 3,462,021 to Hawke and Mackie show a fitting with a longitudinal raised rib having set screw apertures near its ends. This evidence raised at least a *prima facie* case of functionality and nonregistrability.

Faced thus with the burden of going forward, appellant relies on a long period of apparently exclusive use in the marketplace, evidence that some of its competitors, distributors, and jobbers recognize its fittings because of their shape, a court settlement wherein the

defendant agreed not to use a rib, and argument regarding functionality. Appellant has not met its burden.

■ Extended exclusive use, recognition by competitors, distributors, and jobbers, and a naked court settlement are insufficient to indicate the reaction of the purchasing public. The record is devoid of evidence that appellant has succeeded in developing, or even tried to develop, purchaser acceptance of the rib configuration as an indication of origin. The examiner and the board apparently accepted appellant's evidence as establishing a "secondary meaning," i. e., that the raised rib indicated origin in appellant. We do not. If such meaning were created, the question would then be one of *de facto* v. *de jure* secondary meaning. In re Deister, supra, and the result would be the same. See also, In re Pollak Steel Co., 314 F.2d 566, 50 CCPA 1045 (1963).

Appellant argues that the only functional aspect present is that of the rib area surrounding the screw apertures, admitting that that area resists the forces created between the screw and tube. We are told, without reference to evidence, that the portion of the rib between the set screws could be eliminated without adversely affecting the functional characteristics of the fitting. We are concerned here, however, with the functional characteristic of the rib, not that of the fitting. The board considered apparent the function of the rib in adding strength and durability to the fitting. Appellant conceded at oral argument that the rib can add strength to the fitting but insisted that the added strength has no utility in the application for which the fitting is sold.

From all the foregoing we conclude that the board had adequate evidence to support its finding that appellant's raised rib configuration is in essence utilitarian or functional, thereby precluding its registration as a trademark.

Affirmed.