**INTERNATIONAL ORDER OF JOB'S DAUGHTERS, Appellant,**

v.

**LINDEBURG & COMPANY, Appellee.**

**Appeal No. 83–1063.**

United States Court of Appeals, Federal Circuit.

Feb. 8, 1984.

Dennis L. Thomte, Omaha, Neb., for appellant.

George M. Schwab, San Francisco, Cal., for appellee.

Before MARKEY, Chief Judge, and DAVIS and BENNETT, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decision of the Patent and Trademark Office's Trademark Trial and Appeal Board (TTAB or Board), granting appellee's motion for summary judgment on its petition to cancel appellant's trademark registration because of the preclusive effect of a judgment of the United States Court of Appeals for the Ninth Circuit in a prior action between the parties. We affirm.

## I

Appellant, the International Order of Job's Daughters (Job's Daughters), describes itself as a "young women's fraternal organization". Soon after its establishment in 1921, the organization adopted an emblem depicting three young women, carrying a cornucopia, a dove, and an urn. The name JOB'S DAUGHTERS or IYOB FILLIAE (the Latin equivalent) appears at the base of the emblem. Since 1921, Job's Daughters has licensed at least one jeweler and/or supplier to sell jewelry and other merchandise bearing the Job's Daughters emblem.

In 1975, Job's Daughters brought a civil action in the United States District Court for the Northern District of California, alleging that appellee Lindeburg and Company (Lindeburg) had infringed Job's Daughters' then common law trademark rights and had engaged in unfair competition.

The District Court found that Lindeburg had begun manufacturing and selling merchandise with the Job's Daughters emblem sometime between 1952 and 1954. It also found that members of the Board of Trustees of Job's Daughters had known of Lindeburg's activities for many years, but that the organization had failed to take any action to enforce its rights until 1975 when it filed the case before the court. Although the District Court concluded that Lindeburg had infringed Job's Daughters common law trademarks and enjoined Lindeburg from further use of those marks, the court held that Job's Daughters' long delay in seeking to enforce its rights constituted laches and barred the organization from recovering damages. *See International Order of Job's Daughters v. Lindeburg and Company,* 196 USPQ 461 (N.D.Cal.1977).

On appeal, the United States Court of Appeals for the Ninth Circuit reversed the trial court's decision on the grounds that Job's Daughters had failed to prove that buyers of Lindeburg's jewelry (with the Job's Daughters emblem) would think that the jewelry was produced or endorsed by Job's Daughters. Observing that the trial court had found that many American jewelers sold unlicensed Job's Daughters jewelry, the Court of Appeals concluded: "the name and emblem were functional aesthetic components of the product, not trademarks. There could be, therefore, no infringement". *International Order of Job's Daughters v. Lindeburg and Company,* 633 F.2d 912, 208 USPQ 718 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956, 213 USPQ 1056 (1981).

On September 11, 1979, following the decision by the District Court and prior to the decision by the Court of Appeals, the Patent and Trademark Office (PTO) issued a federal trademark registration for the Job's Daughters emblem for use on jewelry and paper products (scrapbooks, napkins, stationery, etc.).

In April 1981, after the Ninth Circuit's decision, Lindeburg filed a petition with the PTO asking that Job's Daughters' recent registration be cancelled because its emblem was not capable of functioning as a trademark. Lindeburg alleged that the widespread use of the Job's Daughters emblem on merchandise manufactured and sold by business entities independent of Job's Daughters had rendered it incapable of indicating origin with Job's Daughters or any other organization. In September 1981, Lindeburg filed a motion for summary judgment on its petition for cancellation, claiming that the judgment of the Ninth Circuit was determinative of the petition for cancellation and should be accorded collateral estoppel effect.

On February 10, 1982, the TTAB granted Lindeburg's motion for summary judgment and cancelled Job's Daughters' trademark registration for jewelry. Lindeburg later filed a second motion for summary judgment, requesting that Job's Daughters' registration be cancelled for all goods. The Board granted that motion in March 1983, in light of a stipulation filed by the parties in which they agreed that the Ninth Circuit's decision applies to all items covered by the registration.

The appeal to this court concerns two questions: first, whether appellee has

standing to seek cancellation of the registration of appellant's mark; and, second, whether the TTAB correctly granted summary judgment to appellee on the basis of the doctrine of former adjudication. For convenience, we discuss the latter issue first.

## II

The TTAB gave preclusive effect to the Ninth Circuit's determination that the Job's Daughters name and emblem were merely "functional aesthetic components of the product, not trademarks", primarily as a result of the widespread merchandising of Job's Daughters jewelry by many American retail jewelers (including Lindeburg) who are independent of Job's Daughters.

In its opinion of February 10, 1982, the TTAB quoted, in full, the concluding paragraph of the Court of Appeals' opinion and gave preclusive effect to the determinations found within it. That paragraph reads (633 F.2d at 920):

> We conclude from our examination of the trial judge's findings and of the underlying evidence that Lindeburg was not using the Job's Daughters name and emblem as trademarks. The insignia were a prominent feature of each item so as to be visible to others when worn, allowing the wearer to publicly express her allegiance to the organization. Lindeburg never designated the merchandise as "official" Job's Daughters' merchandise or otherwise affirmatively indicated sponsorship. Job's Daughters did not show a single instance in which a customer was misled about the origin, sponsorship, or endorsement of Lindeburg's jewelry, nor that it received any complaints about Lindeburg's wares. Finally, there was evidence that many other jewelers sold unlicensed Job's Daughters jewelry, implying that consumers did not ordinarily purchase their fraternal jewelry from only "official" sources. We conclude that Job's Daughters did not meet its burden

of proving that a typical buyer of Lindeburg's merchandise would think that the jewelry was produced, sponsored, or endorsed by the organization. The name and emblem were functional aesthetic components of the product, not trademarks. There could be, therefore, no infringement.

In a previous portion of its opinion, the Court of Appeals said (633 F.2d at 914):

> * * * Since its inception Job's Daughters has licensed at least one jeweler to produce jewelry for it. Job's Daughters sells some of the licensed jewelry directly to its members. Jewelry bearing the name or emblem is also sold by approximately 31,000 retailers across the nation. Most of these retailers presumably had no connection with the Job's Daughters organization. Some sell jewelry manufactured by Job's Daughters' licensees; others sell jewelry manufactured by jewelers not licensed by the organization.

And at another point, the court said (633 F.2d at 918):

> * * * But in the context of this case, the name and emblem are functional aesthetic components of the jewelry, in that they are being merchandised on the basis of their intrinsic value, not as a designation of origin or sponsorship.[1]

■ Under the doctrine of issue preclusion, traditionally called "collateral estoppel", issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation. *Mother's Restaurants Incorporated v. Mama's Pizza, Inc.*, 723 F.2d 1566 at 1569 (Fed.Cir.1983); *see also United States v. Mendoza*, —— U.S. ——, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); Restatement (Second) of Judgments § 27 (1980).

■ Job's Daughters first contends here that the determinations of the Ninth Circuit are not entitled to preclusive effect because the causes of action before that

---

1. The Court of Appeals determinations all rested on the District Court's findings of fact, *see*

196 USPQ at 461–463.

court and before the TTAB were not identical. We are faced, however, with an application of issue preclusion (or collateral estoppel), not with claim preclusion (or *res judicata*). Issue preclusion, as distinguished from claim preclusion, does not include any requirement that the claim (or cause of action) be the same: "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, *whether in the same or a different claim*". (Emphasis added) Restatement (Second) of Judgments § 27 (1980). *See also Mother's Restaurants, supra*, at 1569.

Aside from this mistaken contention, Job's Daughters' challenge to the Board's decision appears to be based on the argument that the Ninth Circuit's determinations are not, in and of themselves, a sufficient basis for the Board's granting of Lindeburg's motion for summary judgment on the cancellation petition. We hold, on the contrary, that the Board had valid grounds for cancellation on the basis of the factual determinations accepted by the Ninth Circuit.

■ The TTAB may properly cancel a trademark registration when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing. *Lipton Industries, Inc. v. Ralston Purina Company*, 670 F.2d 1024, 1026, 213 USPQ 185, 187 (CCPA 1982); 1 J. McCarthy, *Trademarks and Unfair Competition* § 20.-12 (1973).

■ *Grounds for Cancellation:* The legal issue in a cancellation proceeding is the right to register a mark. *Flavor Corp. of America v. Kemin Industries*, 493 F.2d 275, 279, 181 USPQ 289, 292 (8th Cir.1974). For Principal Register registrations less than

five years old (like that of Job's Daughters), cancellation may be based upon any ground which would have prevented registration initially. 1 J. McCarthy, *supra*, at § 20.14.

■ One criterion for federal trademark registration is that the mark for which registration is sought has become distinctive of the applicant's goods in commerce. 15 U.S.C. § 1052(f). The Lanham Act defines a trademark as any "word, name, symbol, or device ... used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others". 15 U.S.C. § 1127. Conversely, a configuration which does not fulfill the functions of a trademark, but, rather, serves essentially a utilitarian or functional purpose cannot be registered as a trademark.[2] *Application of Hollaender Manufacturing Co.*, 511 F.2d 1186, 1187, 185 USPQ 101, 102 (CCPA 1975).

■ The Ninth Circuit held that the Job's Daughters name and emblem—mainly as a result of its widespread use by nonlicensed jewelers and lack of control by appellant—fulfilled a functional, aesthetic purpose and did not serve as a trademark.[3] This issue, as well as the facts underlying the Ninth Circuit's conclusion, were actively contested by the parties to that suit and were directly necessary to that court's holding in the infringement action. The court was indisputedly a court of competent jurisdiction. Under the principles applying to issue preclusion, those determinations are binding on the TTAB and on us, and are sufficient to call for cancellation of the registration.

■ *Standing:* Section 14 of the Lanham Act provides that a petition to cancel a trademark may be filed by any person "who believes that he is or will be damaged by the registration of a mark ..." 15 U.S.C. § 1064. Appellant contends that the

---

2. We do not mean to suggest that a configuration which has an incidental utility may never be registered. *See Application of Penthouse International Ltd.*, 565 F.2d 679, 195 USPQ 698 (CCPA 1977).

3. We disagree with Job's Daughters' contention that the Court of Appeals' decision was limited to the extremely narrow holding that Lindeburg, and only Lindeburg, did not use the Job's Daughters emblem as a trademark. In our view, the correct interpretation of the court's holding is stated in the text, *supra*.

TTAB's grant of summary judgment was improper because Lindeburg had not yet proved that it would be "damaged" by continued registration of the Job's Daughters' mark. In recent cases, this court has explicitly said that there is no requirement that damage be proved in order to establish standing or to prevail in a cancellation proceeding. *See Rosso and Mastracco, Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1265, 219 USPQ 1050, 1052 (Fed.Cir.1983); *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1324–26, 217 USPQ 641, 647–48 (Fed. Cir.1983). All the Lanham Act requires is that the cancellation petitioner plead and prove facts showing a "real interest" in the proceeding in order to establish standing. *Rosso and Mastracco, supra; Nina Footwear, supra.*

 Lindeburg has clearly demonstrated a "real interest" in this cancellation proceeding. The allegations which Lindeburg made in its petition for cancellation regarding its longtime production and sale of merchandise with the Job's Daughters emblem are fully supported by the Ninth Circuit's recital of the facts found by the District Court.

In addition, by virtue of that Court of Appeals' decision in its favor, Lindeburg has an equal right with that of Job's Daughters-approved-jewelers to use the Job's Daughters emblem on its jewelry. Continued federal registration of the mark is inconsistent with that right. Registration accords Job's Daughters, should it file another infringement suit against Lindeburg, *prima facie* proof of an exclusive right to use the Job's Daughters emblem in commerce, a right which it should not have. *See DeWalt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656, 661, 129 USPQ 275, 280 (CCPA 1961).[4] In these circumstances, Lindeburg cannot be considered a "mere

intermeddler" whom the standing requirements would bar from initiating cancellation proceedings. *See Lipton Industries, Inc. v. Ralston Purina Co., supra,* 670 F.2d at 1028–29, 213 USPQ at 189.

For these reasons, the decision of the TTAB, granting Lindeburg's motion for summary judgment on its petition for cancellation of Job's Daughters' registration, is affirmed.

AFFIRMED.

---

4. Though Lindeburg prevailed in the Ninth Circuit infringement action against it brought by Job's Daughters, we believe that it should not have to rely solely on the doctrine of former adjudication to bar appellant's use of its registration against Lindeburg in another suit. There are enough exceptions to the doctrine of issue preclusion (*see* Restatement (Second) of

Judgments § 28 (1980)) to render it impossible to say that former adjudication is an all-sufficient remedy, in itself, to preclude any attempt to use the registration against Lindeburg. Even though appellee might prevail in its defense of former adjudication, it should not have to litigate that defense in order to be free of appellant's registration advantage.