THIS OPINION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

WINTER

Mailed:  June 8, 2011

Opposition No. 91179064
Opposition No. 91182358
Opposition No. 91183644
Opposition No. 91186026
Opposition No. 91187261
Opposition No. 91188860
Opposition No. 91191230
Opposition No. 91192691
Opposition No. 91194551
Opposition No. 91196019
Opposition No. 91198046
Cancellation No. 92046853

**Stephen Slesinger, Inc.**

**v.**

**Disney Enterprises, Inc.**

**Before Bucher, Taylor, and Mermelstein,**
**Administrative Trademark Judges.**

**By the Board:**

This consolidated proceeding involves a dispute between Stephen Slesinger, Inc. ("SSI") and Disney Enterprises, Inc. ("Disney"), which, respectively, claim rights to trademarks derived from or connected with the literature of A.A. Milne, author of the well-known children's books featuring Winnie-the-Pooh and other characters (hereafter collectively referred to as the "POOH works").  This case is part of a larger, long-standing dispute involving copyrights, various contractual obligations, and Milne's successors-in-interest;

but the only issue that is before the Board is the registrability of various trademarks derived from the POOH works.  The record shows (and the parties do not dispute) that in 1930, Milne transferred to Stephen Slesinger (SSI's predecessor-in-interest) exclusive merchandising and other rights based on the POOH works in the United States and Canada; that in 1961, SSI granted exclusively to Walt Disney Productions the rights it had acquired in the POOH works in the 1930 agreement with Milne;[1] and that in 1983, SSI signed an agreement with Walt Disney Productions and Milne's successors-in-interest (Christopher Milne and the trustees for the Pooh Properties Trust) involving the POOH works, which revoked the 1930 and 1961 agreements and sought to resolve the parties' previous disputes and clarify their contractual arrangements.  The interpretation of the 1983 agreement is at the crux of the current dispute between the parties, which includes these opposition and cancellation proceedings.  SSI contends that certain rights in the POOH works were reserved to it, while Disney maintains that the 1983 agreement assigned all of SSI's ownership rights in the POOH works to Disney (including any trademark rights appurtenant to them).

---

[1] *Milne ex. Rel Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1040, 77 USPQ2d 1281 (9th Cir. 2005).

We turn to the instant proceedings.  Disney currently seeks to register the marks POOH, WINNIE THE POOH, CLASSIC POOH, MY FRIENDS TIGGER & POOH, and other marks comprising the names or images of "Pooh" and related fictional characters (hereafter referred to as the "POOH marks") for use in connection with various goods, including books, toys, jewelry, and clothing, as identified in the applications[2] involved in the above-referenced consolidated opposition and cancellation proceedings.[3]  SSI opposes registration of the applied-for marks on the grounds of priority and likelihood of confusion, dilution,[4] fraud, and lack of ownership.  In

---

[2] Application Serial Nos. 78807797, 78807737 and 78807736 (Opp. No. 91179064); Application Serial Nos. 78807741 and 78807739 (Opp. No. 91182358); Application Serial Nos. 77130188, 77106448, 77106287, 77106420 and 77106429 (Opp. No. 91183644); Application Serial Nos. 77189480, 77189490, 77189498, 77237639, 77282353, 77130198 (Opp. No. 91186026); Application Serial Nos. 77189475, 77487298 and 77487303 (Opp. No. 91187261); Application Serial Nos. 77536925 and 77555882 (Opp. No. 91188860); Application Serial No. 77189502 (Opp. No. 91191230); Application Serial No. 77357499 (Opp. No. 91192691); Application Serial No. 77558229 (Opp. No. 91194551); Application Serial No. 77890766 (Opp No. 91196019); and Application Serial Nos. 77887371 and 77887445 (Opp. No. 91198046).

[3] On October 18, 2009, Opposition Nos. 91179064, 91182358, 91183644, 91186026, 91187261, 91188860, 91191230, 91192691, and Cancellation No. 92046853 were consolidated; and, pursuant to established Board policy, Opp. No. 91179064 was designated as the parent case.  In subsequent orders issued on May 19, 2010, September 3, 2010, and on February 11, 2011, Opposition Nos. 91194551, 91196019, and 91198046, respectively, were also consolidated with Opp. No. 91179064.

[4] Opposition Nos. 91179064 and 91182358, and Cancellation No. 92046853 do not include a dilution claim.

addition, SSI seeks to cancel twenty-one[5] registrations owned by Disney for various POOH marks for goods similar to those identified in its applications on the grounds of priority and likelihood of confusion, fraud, and lack of ownership.

This consolidated case now comes up for consideration of Disney's fully briefed motion to dismiss, which was filed on December 23, 2009, in Opposition No. 91192691 in lieu of an answer, and which the parties have agreed[6] should apply to all of the consolidated proceedings.  In view thereof, we also consider SSI's responsive brief filed on September 13, 2010, and Disney's reply brief filed on October 4, 2010, in Opposition No. 91179064, rather than the briefs filed previously in Opposition No. 91192691.

The Parties' Arguments

Disney requests that the Board dismiss all of SSI's claims on the basis that SSI has no ownership interest in any of the POOH works, which includes the POOH marks that are the

---

[5] Since the filing of the petition to cancel on December 4, 2006, nine of Disney's registrations have been cancelled under Section 8 of the Trademark Act.  The remaining active registrations sought to be cancelled in Canc. No. 92046853 are as follows: U.S. Reg. Nos. 1982916, 2257705, 2421065, 2700618, 2978291, 3021643, 3021644, 3024286, 3024287, 3038490, 3101432, 3122189, and 3175607.

[6] See Disney's "Notice of Final Determination of Civil Action, Including Appeal," filed July 16, 2010, in Opp. No. 91179064, and footnote 2 in SSI's response to motion to dismiss filed on September 13, 2010, in Opp. No. 91179064.

subject of these consolidated proceedings (motion at 2).

Disney asserts, *inter alia*, the following:

- The parties to the instant proceedings were involved in a related civil action in Federal district court,[7] in which SSI asserted counterclaims against Disney for, *inter alia*, trademark, trade dress and copyright infringement.

- Upon Disney and SSI's cross-motions for summary judgment, the district court determined that "under the clear terms of the [SSI and Disney] agreements, SSI transferred all of its rights in the Pooh works to Disney" and that SSI "*retained no rights*" in the Pooh works (motion at 1, Disney emphasis).

- After concluding that SSI "may not now claim infringement of any retained rights" (motion at 2), the district court entered final judgment against SSI, and dismissed all of SSI's counterclaims on the merits and with prejudice (motion, Exh. B at 2).

Disney contends that in view of the district court's dismissal based on lack of ownership, the court "necessarily decided" that SSI "retained no rights" in the POOH works (motion at 3) and, as a result, SSI is collaterally estopped from relitigating the issue of ownership of the POOH trademarks before the Board.  In support of its motion, Disney submitted copies of the district court's order of September

---

[7] *Milne ex rel. Coyne v. Slesinger, Inc.*, No. 02-08508 (C.D. Cal. 2009).  Disney Enterprises, Inc. (the party defendant herein), The Walt Disney Company, and Walt Disney Productions, were the named counter-defendants in the civil action (and were collectively referred to as "Disney").  On September 25, 2009, the district court entered an order granting Disney's motion for summary judgment on SSI's first, second, third, and tenth counterclaims and denying SSI's cross-motion for summary adjudication with respect to its first, second and third counterclaims; and on October 7, 2009, the district court entered final judgment.

25, 2009,[8] addressing the parties' cross-motions for summary judgment, and the court's Final Judgment order of October 7, 2009,[9] dismissing all of SSI's counterclaims on the merits and with prejudice.[10]  Also of record is a copy of the parties' Stipulation to Voluntary Dismissal of Appeal filed with the United States Court of Appeals for the Ninth Circuit, by which SSI voluntarily dismissed its appeal of the district court order of September 25, 2009.[11]

In opposition, SSI argues that collateral estoppel is inapplicable to its claims before the Board because the district court "**did not actually decide** the issue of whether the grant of authorization [in the 1983 agreement] was a license or a full assignment of all of Opposer's rights" (response at 5, emphasis original), and because the determination of whether SSI assigned or licensed its rights in the POOH works (including the POOH marks) to Disney was not necessary to the judgment (response at 7, 11).  Rather, SSI asserts that the "only necessary and essential determination

---

[8] "Order Granting Counter-Defendants' Motion for Summary Judgment and Denying Counter-Claimant's Motion for Summary Adjudication," *Milne v. Slesinger*, Document 545, Case No. 02-08508 (C.D. Cal., Sept. 25, 2009) (motion, Exh. A).

[9] "Final Judgment," *Milne v. Slesinger*, Document 549 (C.D. Cal., Oct. 7, 2009) (motion, Exh. B).

[10] Disney also submitted with its reply brief copies of its motion for summary judgment in the civil action on SSI's counterclaims, SSI's responsive brief, and Disney's reply brief thereto.

made [by the district court] was that [Disney's] challenged uses[12] of the POOH works were authorized, thus precluding a claim for trademark infringement" (response at 6).  As such, contends SSI, the district court's statement that "SSI transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights" (*Milne v. Slesinger*, slip op. at 8) "was with respect to the issue of breadth of certain uses authorized, not whether certain rights were licensed or assigned to Disney" (response at 8-9).  SSI maintains that the district court only decided that issue, and for that reason alone, SSI's counterclaims failed (response at 8, 12).  Further, SSI argues that a conclusive determination of ownership of rights in the POOH works on summary judgment would have been improper in the civil action because it would have required the district court to decide material factual issues in dispute, such as whether SSI's "grant of

---

[11] See Exh. A to "Disney's Notice of Final Determination of Civil Action, Including Appeal," filed July 16, 2010 in Opp. No. 91179064.

[12] With respect to SSI's counterclaim for trademark infringement, the challenged uses of the POOH works are described in ¶ 132 of SSI's Fourth Amended Answer and Counterclaims, as follows:

  Disney has been exploiting the Pooh Family of Characters in mediums to which it did not receive rights under the 1983 Agreement.  Disney has been diluting Slesinger's Trademark Rights without permission and in violation of its Trademark Rights.  These mediums include, but are not limited to: Internet use, wireless use, advertising uses, credit cards, ringtones on mobile phones, greeting cards, computer graphics, Internet computer games, computer screen savers, computer wallpapers, character meals, convention services (such as the "Tigger Award"), magazines, multi-media kits, and other products and services."

authorization" was exclusive in nature, whether such rights constituted copyright or trademarks rights, and whether the 1983 agreement allowed for a reversion of rights to SSI.  "Yet not one of these pieces of evidence was mentioned in the Order that Disney claims somehow is decisive here" (response at 7). SSI also points out that the district court order recognized that SSI is entitled to "royalties for all uses" (*Milne v. Slesinger*, slip op. at 7); therefore, the district court could not have meant that SSI conveyed all of its rights in the POOH marks to Disney.

In reply, Disney points to documentation in the civil action which shows that the issue of whether SSI's grant of rights in the POOH works constituted an assignment or a license was extensively briefed by the parties and, thus, which party owns the POOH works was necessarily decided by the district court in order to consider SSI's counterclaim for trademark infringement and for declaratory relief. Specifically, Disney argues that in order to address SSI's request that the district court issue a declaratory judgment requiring the U.S. Patent and Trademark Office to correct the title of Disney's POOH registrations, the district court had to determine whether by the 1983 agreement SSI transferred all rights in the POOH works to Disney, or whether said agreement constituted a license agreement with respect to the POOH

works.  Additionally, Disney contends that the district court's order is not ambiguous as to which rights in the POOH works were transferred by SSI to Disney.

Board's Decision

Because both parties submitted and relied on materials outside of SSI's pleadings, we treat Disney's motion as one for summary judgment.  *See* Fed. R. Civ. P. 12(d); Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a).  *See also Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys. Inc.,* 988 F.2d 1157, 26 USPQ2d 1038 (Fed. Cir. 1993); *Libertyville Saddle Shop Inc. v. E. Jeffries & Sons Ltd.,* 22 USPQ2d 1594 (TTAB 1992); and TBMP § 503.04 n.1 (3d ed. 2011) ("With respect to inter partes proceedings commenced prior to November 1, 2007, if, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are submitted and not excluded by the Board, the motion will be treated as a motion for summary judgment").

- *Summary Judgment Standard*

Summary judgment is an appropriate method of disposing of cases in which there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

A party moving for summary judgment has the burden of demonstrating the absence of evidence to support the nonmoving party's case, and that it is entitled to judgment as a matter

of law.  *Sweats Fashions Inc. v. Pannill Knitting Co*., 833 F.2d 1560, 4 USPQ2d 1793, 1795-1796 (Fed. Cir. 1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A factual dispute is genuine if, on the evidence of record, a reasonable finder of fact could resolve the matter in favor of the non-moving party.  *See Opryland USA Inc. v. Great American Music Show Inc*., 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); and *Olde Tyme Foods Inc. v. Roundy's Inc*., 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).  Additionally, "the record must be viewed in a light favorable to the party opposing the motion, and all justifiable inferences are to be drawn in the non-movant's favor."  *Barmag Barmer Maschinenfabrik AG,* 731 F.2d 831, 221 USPQ 561, 564 (Fed. Cir. 1984).

- *Collateral Estoppel*

Under the doctrine of collateral estoppel or "issue preclusion," once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is normally conclusive in a subsequent suit involving the parties to the prior litigation.  *Int'l Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 220 USPQ 1017, 1019 (Fed. Cir. 1984).  The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided again.  *Mother's Rest. Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 221 USPQ 394, 397 (Fed. Cir. 1983).

In order for issue preclusion to apply, the following requirements must be met:  (1) the issue to be determined must be identical to the issue involved in the prior litigation; (2) the issue must have been raised, litigated and actually adjudged in the prior action; (3) the determination of the issue must have been necessary and essential to the resulting judgment; and (4) the party precluded must have been fully represented in the prior action.  *See Mayer/Berkshire Corp. v. Berkshire Fashions Inc.*, 424 F.3d 1229, 76 USPQ2d 1310, 1312-13 (Fed. Cir. 2005); *Jet Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 55 USPQ2d 1854, 1858-59 (Fed. Cir. 2000); and *Larami Corp. v. Talk To Me Programs Inc.*, 36 USPQ2d 1840, 1843-44 (TTAB 1995).

We turn to the first factor for issue preclusion, that is, whether the issue to be determined in this case is identical to the issue involved in the prior civil action between the parties.  After carefully reviewing the parties' arguments and exhibits, we find that there is no genuine dispute that the key issue to be determined in these consolidated proceedings is identical to the issue involved in the prior civil action, namely, whether SSI has an ownership interest in the POOH works.

As to the instant proceedings, to prevail on any of its claims, SSI would have to establish that it has rights in

the involved trademarks. Therefore, to survive Disney's construed motion for summary judgment, SSI must establish either that there is no genuine dispute that it has an ownership interest in the marks, or that there is at least a genuine dispute as to its ownership of the marks and that it is entitled to try the issue.

Specifically, SSI is the plaintiff in these proceedings and asserts rights which are not based on its own federal registrations.[13] As such, SSI may not rely on a presumption of validity of its trademark rights, and in order to prevail on its substantive claims of likelihood of confusion or dilution, or at least proceed to trial on its claims, SSI bears the burden of establishing that it owns "a mark or trade name previously used … and not abandoned," Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), or that it is "the owner of a famous mark …," Section 43(c) of the Trademark Act, 15 U.S.C. § 1125(c). Likewise, ownership of the POOH marks is central to SSI's fraud claim and to its claim of lack of ownership under Section 1 of the Trademark Act, 15 U.S.C. 1051(a). In particular, SSI's fraud and ownership claims are based, respectively, on SSI's allegations that Disney was (at the time of filing) a

---

[13] The five trademark registrations for POOH related marks that are identified in SSI's notices of opposition, namely, U.S. Reg. Nos. 283856, 302372, 302240, 304587 and 313255, have all been cancelled.

licensee of SSI and that Disney attempted to mislead the USPTO when it asserted otherwise in its applications, and that SSI is the rightful owner of the involved mark.[14] Thus, SSI's ownership of rights (or lack thereof) in the POOH marks is clearly a central issue in these proceedings with respect to SSI's substantive grounds for relief.[15]

Whether SSI has any ownership interest in the POOH works as a result of the 1983 agreement between the parties was also the pivotal issue addressed by the district court. SSI alleged in its Fourth Amended Answer and Counterclaims that "the 1983 Agreement consisted of two agreements:  a grant to Slesinger and then a license from Slesinger to Disney" (¶69); that SSI "has valid protectable trademark

---

[14] See ¶ 9 (fraud claim, count one) and ¶ 14 (lack of ownership, count two), in the notice of opposition in Opp. No. 91179064; ¶¶ 10 & 15 in Opp. Nos. 91182358, 91183644, 91192691, 91194551, 91196019, and 91198046; ¶¶ 12 & 17 in 91186026, 91187261, 91188860, and 91191230; and ¶¶ 5, 8 & 10 (fraud, lack of ownership and prior rights) in the petition for cancellation.

[15] Inasmuch as the district court decided that SSI lacks any ownership interest in the POOH works, we find that it is also established that SSI lacks any ownership interest in the POOH marks that could be damaged by Disney's registrations.  In view thereof, SSI lacks standing to raise any of its asserted claims in these proceedings. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).  *See also Gal v. Israel Military Indus. of the Ministry of Defense of the State of Israel,* 230 USPQ 669, 674 (TTAB 1986), *aff'd,* 824 F.2d 980 (Fed. Cir. 1987) (not precedential) ("In determining then, that collateral estoppel bars Gal from asserting proprietary rights in the term "UZI" in this action, we must conclude that Gal does not have standing to oppose registration by applicant of the mark sought to be registered on any statutory ground where proprietary rights in the term are necessary for standing to exist.").  However, our dismissal of SSI's claims *infra* is not based solely on SSI's lack of standing.

rights in 'Winnie the Pooh,' 'Pooh,' and 'Christopher Robin'" (¶ 128); that the scope of Disney's grant to use Slesinger's trademark rights was established by the 1983 agreement, that all use by Disney has been pursuant to a license, and that Slesinger licensed trademark rights to Disney (¶ 130); and that, as a licensee of certain of Slesinger's trademark rights, the use of the marks in Disney's trademark registrations inures to the benefit of SSI (¶ 137).  Critically, SSI requested that the district court issue a declaratory judgment ordering the U.S. Patent and Trademark Office to change the title to Disney's several POOH registrations (¶ 137) to reflect ownership by SSI.

Disney, in its motion for summary judgment in the civil action, sought judgment on SSI's counterclaims for infringement on the basis that SSI has no ownership rights in the POOH works and lacked standing to bring the infringement action (reply brief, Exh. B, Sec. II, at 2).  In its cross-motion for summary judgment, SSI sought a summary adjudication of its first, second and third counterclaims for copyright, trademark infringement, and trade dress infringement, respectively (reply brief, Exh. C, Sec. III, at 4 and Sec. IV, at 12).  SSI also argued that "Disney never procured an assignment of [SSI's POOH trademarks and trade dress] rights in either the 1961 or the 1983 Agreements."  *Id.*

The district court specifically addressed the issue of whether SSI has any remaining ownership interest in the POOH works, as follows:

> Summary Judgment is appropriate where the terms of a contract are clear and unambiguous. The fact that the parties disagree as to their meaning does not alter that result. … Here, the unambiguous nature of the contracts is strongly supported by the conduct of the parties over the nearly 50 years of their relationship. Both parties have treated the agreements as constituting a transfer from SSI to Disney of **all** of SSI's interests in the Pooh characters, entitling SSI to royalties[16] for all uses. … The Court is satisfied that under the clear terms of the parties' agreements, SSI transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights. Disney's Motion for Summary Adjudication of the first, second, third, and tenth counterclaims is granted; and SSI's cross-motion for Summary Adjudication of the first, second and third Counterclaims is denied.

*Milne v. Slesinger*, slip op. at 7-8 (emphasis in original).

Based on our review of SSI's pleading in the civil action, the parties' cross-motions for summary adjudication, and the district court's order in the civil action, there is no genuine dispute that the civil action involved the

---

[16] In consideration of the grant made by SSI in paragraph 7 of 1983 agreement ("Slesinger hereby assigns, grants, and sets over unto Disney the sole and exclusive right in the United States and Canada … ."), and in consideration of the grant made in paragraph 8 of said agreement ("In addition, Slesinger hereby assigns, grants and sets over unto Disney all of the further rights in and to said "work" … ."), Disney agreed to pay SSI specified amounts described in paragraphs 9 and 10 of the agreement. "Royalties in an assignment agreement are properly conceived as deferred consideration for the original conveyance of rights, with the amount of consideration pegged to the commercial success of the product." *Baladevon, Inc. v. Abbott Labs., Inc.*, 871 F.Supp. 89, 33 USPQ2d 1743, 1748 (D. Mass. 1994) (internal citations omitted).

specific issue of which party owns the POOH marks as a result of the contracts between the parties. Further, based on our review of SSI's pleadings in these consolidated cases, the identical issue of ownership is also involved in the instant proceedings, because, as discussed, SSI cannot prevail in these cases without establishing that it owns the POOH trademarks.[17]

Regarding the second and fourth factors for applying issue preclusion, we find that there is also no genuine dispute that the issue of ownership of the POOH marks was raised, litigated, and actually adjudged in the prior civil action, and that SSI was fully represented by counsel in the prior proceeding. Specifically, as discussed, Disney raised the issue of ownership of the POOH works by seeking dismissal of SSI's counterclaims in the civil action on the basis that SSI has no ownership rights in the POOH works and thus could not prevail in the infringement action. SSI opposed Disney's motion, contending that SSI's transfer of rights in the POOH works was a license, rather than an

---

[17] Under Trademark Act § 2(d), SSI must establish its priority, which it cannot do without proving its ownership of some prior right with which Disney's mark might cause confusion. Likewise, in order to prevail on its dilution claim, SSI would have to prove that it is "the *owner* of a famous mark … ." Trademark Act § 43(c) (emphasis added). Finally, SSI's fraud and ownership claims both plead as an essential element that Disney does not own the marks in the subject applications because they are in fact owned by SSI. *E.g.*, Notice of Opp. 91179064, ¶¶ 9 (fraud), 14 (lack of ownership). Thus none of SSI's pleaded claims are tenable in light of the district court's finding that SSI transferred all of its rights to Disney.

assignment.  The district court granted Disney's motion for summary judgment with respect to SSI's counterclaims and denied SSI's cross-motion for summary judgment.[18]  *Milne v. Slesinger*, slip op. at 12.  Further, in its Final Judgment order, the Court stated expressly that it has "fully adjudicated all claims and counterclaims" between the parties, and dismissed with prejudice SSI's first, second, and third counterclaims for copyright, trademark, and trade dress infringement, stating that "all of [SSI's] counterclaims are dismissed on the merits and with prejudice" (Final Judgment order, *Milne v. Slesinger*, Document 549 (C.D. Cal., Oct. 7, 2009)).

In view of the foregoing, no genuine dispute exists with respect to whether the issue of ownership of the POOH works was raised, litigated and adjudged in the prior civil action.  Further, inasmuch as SSI's "Memorandum of Points and Authorities in Opposition to Disney's Motion for Summary Judgment or Summary Adjudication on Slesinger's Counterclaims" in the civil action was signed and submitted by SSI's counsel in the instant proceedings, there is no genuine dispute that SSI was fully represented in the prior civil action.

---

[18] Thus, SSI's request for declaratory relief in the nature of requiring the USPTO to change the title to the Disney "Pooh" registrations was also effectively denied.

Turning to the third factor for collateral estoppel, the parties disagree as to whether the district court's determination that SSI transferred "all of its rights in the Pooh works" was necessary and essential to the resulting judgment for Disney.  As discussed, Disney argues that in order to grant its summary judgment motion, the district court "necessarily decided" that SSI "retained no rights" in the POOH works, *i.e.,* that the transfer of rights to Disney constituted an assignment, rather than a license.  In contrast, SSI argues that the district court order decided only a very narrow issue with respect to its trademark infringement claim, namely, whether there were any unauthorized uses by Disney of the POOH works beyond the interests that SSI transferred to Disney in the 1961 and 1983 agreements.

We are persuaded by the entirety of the record put before us, and resolving any inferences in favor of SSI, the non-moving party, that there is no genuine dispute that the district court's determination regarding the nature and scope of the conveyance from SSI to Disney was necessary and essential to the resulting judgment in the civil action.  As shown in the following passage from the order, the district court clearly interpreted the agreements of the parties, examined the nature of the transfer of rights and, based thereon, determined whether SSI assigned or merely licensed

its rights in the POOH works to Disney (and thus retained some rights in the POOH works), so that the court could decide whether there was a genuine dispute as to which party owns the POOH works, and thus determine the pleaded claims.

> In spite of SSI's protestations today that "[t]he rights Slesinger obtained from Milne are much broader than the rights Slesinger licensed to Disney in the 1983 Agreement," SSI Opp'n at 4, the language of the parties' agreements belies that contention. Significantly, nowhere in its motion papers does SSI identify precisely what rights it believes it retained. Nor can any such rights be discovered by reading the contracts.  SSI received "certain rights" from Milne and "further rights" in later agreements, and granted "those rights it had acquired" to Disney. …  The Court is satisfied that under the clear terms of the parties' agreements, SSI transferred all of its rights in the Pooh works to Disney ….

*Milne v. Slesinger*, slip op. at 6-7, 8.

SSI argues that the district court decided only that Disney's uses were authorized under the 1983 agreement, and that we should not interpret the court's decision to have passed on the broader issue of whether the 1983 agreement reserved to SSI "any and all rights whatsoever" in the POOH works (response at 9).  The clear wording of the district court's order does not support SSI's contention that the decision was focused only on whether a particular array of uses by Disney of the POOH works was authorized.

As noted above, SSI's ownership of rights to the POOH works was clearly an essential element of the claims in the civil action.  In particular, before considering whether Disney's actions were infringing (or whether SSI was

19

entitled to have USPTO records regarding Disney's registrations corrected to show SSI as owner), the district court necessarily had to consider whether SSI had any rights in the POOH works. The question of whether Disney's uses were infringing or "authorized" is only relevant once SSI's rights are established. To that end, the court considered "the unambiguous nature of the contracts," which it deemed to be "strongly supported by the conduct of the parties over the nearly 50 years of their relationship" (*Milne v. Slesinger*, slip op. at 7), and determined that SSI had retained no rights at all. The fact that the district court described the transaction between the parties in relation to the POOH works as a "transfer" from SSI to Disney of all of SSI's rights in the POOH works does not mean that the district court did not decide the issue of ownership, or that resolving that issue was not necessary and essential to the resulting judgment for Disney. On the contrary, in view of Disney's motion seeking summary adjudication on SSI's counterclaim for trademark infringement and SSI's corresponding demand for declaratory relief regarding the title to the POOH trademarks, the district court did consider and necessarily decided the nature of the parties' transactions.

Further, we disagree with SSI's contentions that the order is unclear as to the nature of the transferred rights,

20

*i.e.,* whether copyright and/or trademark rights were conveyed, or that because material facts assertedly remained in dispute, the district court could not have determined on summary judgment that SSI had transferred by assignment *all* of its rights in the POOH works.[19] On the contrary, the factual basis of the order and the scope of the rights discussed are unambiguous. The district court relied on the wording in the relevant contracts and concluded that SSI had transferred *all* rights in the POOH works.

In view thereof, the district court determined that there was no genuine dispute as to the nature and scope of the conveyance from SSI to Disney, and that other allegations of fact were not material to its determination regarding the transfer of rights between the parties. *Cf. Octocom Sys., Inc. v. Houston Computers Serv., Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787-88 (Fed. Cir. 1990) ("A factor … is not made material by submission of evidence on the point; rather, the factor must be shown to be material or relevant *in the particular* case …." (*emphasis* in original)).

In view of the factual findings of the district court in granting Disney's motion for summary judgment and in

---

[19] Had SSI believed that the district court exceeded its authority under Fed. R. Civ. P. 56 in deciding the motions before it, its remedy would have been to press its appeal. Needless to say, we do not review the district court's order to determine whether it was properly decided.

denying SSI's cross-motion for declaratory and other relief, we find that the determination that SSI transferred all of its rights in the POOH works was necessary and essential to the resulting judgment for Disney.

In sum, as a result of the prior district court litigation between the parties, we find that there is no genuine dispute that the issue of ownership of the POOH works and of the POOH trademarks derived from those works to be determined in these consolidated proceedings is identical to the issue involved in the prior civil action; that the issue of ownership of the POOH works was actually raised, litigated and adjudged in the district court action; and that the determination of whether SSI assigned or licensed its rights to the POOH works to Disney was necessary to the resulting district court judgment.  Further, there is no genuine dispute that SSI had a full and fair opportunity to litigate the issue of ownership in the prior civil action.

In view of the foregoing, we find, as a matter of law, that Disney is entitled to summary judgment based on collateral estoppel.  Having transferred all of its interests in the POOH works (including any associated trademark rights), SSI cannot prevail on its claims of likelihood of confusion, dilution, fraud or lack of ownership.

22

Accordingly, the consolidated opposition and cancellation proceedings, namely, Opposition Nos. 91179064, 91182358, 91183644, 91186026, 91187261, 91188860, 91191230, 91192691, 91194551, 91196019, 91198046, and Cancellation No. 92046853 are <u>dismissed with prejudice</u>.

●●●